[Civ. No. 4717.   Third Appellate District.—January 31, 1933.]

CALISTOGA VINEYARD COMPANY, LIMITED (a Corporation), Respondent, v. A. LUCHETTI, Appellant.

Thomas C. Anglim and Mervin C. Lernhart for Appellant.

L. E. Johnston and Nathan Coombs, as *Amici Curiae* on Behalf of Appellant.

Wallace T. Rutherford for Respondent.

PARKER, J., *pro tem.*—This action was commenced to recover a sum of money received by defendant for the use and benefit of plaintiff. The complaint was on such a common count.

Defendant answered, specifically denying allegations of complaint and interposed a cross-complaint in three counts. First he alleges lack of capacity of plaintiff to maintain the suit. This count was subsequently stricken, and as no point is urged on the correctness of the ruling we will give no future notice to this phase of the case. In detailing the cross-complaint we will refer to the parties as plaintiff and defendant, meaning thereby the original plaintiff and defendant, rather than to designate them as cross-parties.

The cross-complaint then alleges that one T. A. Turner was the agent of plaintiff and as such agent represented plaintiff in negotiations with third persons for the sale and marketing of grapes.

That Turner did wilfully, falsely, deceitfully and fraudulently represent to defendant that plaintiff had made arrangements with eastern buyers for the sale of a large quantity of grapes and that persons marketing grapes through plaintiff would receive for the grapes so marketed not less than $32 per ton over and above marketing costs.

That said Turner further wilfully and deceitfully and fraudulently represented to defendant that in order to take advantage of this favorable arrangement it would be necessary for defendant to agree in writing to deliver not less than 110 tons of grapes to plaintiff, and said Turner produced a writing fraudulently representing to defendant to contain an agreement for defendant to deliver 110 tons of grapes, which agreement Turner fraudulently represented to be a mere matter of form.

It is then alleged that the representations were false and fraudulent and known by Turner so to be and were made by Turner for the purpose of inducing defendant to market grapes through plaintiff; that in truth and in fact the agreement signed by defendant was a consignment contract whereby defendant consigned his grapes to plaintiff under an ordinary form of consignment agreement.

It was alleged that defendant was illiterate and unfamiliar with business and that he relied absolutely upon the false representations of said Turner and that thereafter he delivered to plaintiff some 113 tons of grapes of a market value of $3,380.

As a further ground of cross-complaint it is alleged that plaintiff received for said grapes the sum of $3,380 over and above all expenses and refuses to account to defendant therefor, save that there has been paid to defendant the sum of $2,500, leaving the balance of $880 for which defendant prays judgment.

Plaintiff answered the cross-complaint. In the answer plaintiff admitted making the representation that arrangements had been made with eastern buyers for the sale of a large quantity of grapes and alleges the statement to have been true. The answer sets up the fact to be that plaintiff had eastern contracts for grapes at from $50 to $57.50 per ton f. o. b. Calistoga at the time the contract with defendant was executed. But, alleges the answer, the arrangements with the eastern buyers required such grapes to be free from

rain damages. That all of the grapes delivered to plaintiff by defendant were rain damaged; that the rains, aside from deteriorating the grapes, delayed the harvesting and marketing and plaintiff was unable to fill its eastern contracts. Admits the receipt of 113 tons of grapes from defendant and rests upon the pleaded contract of assignment.

Denies that plaintiff ever paid defendant the sum of $2,500, on the contract, but alleges that this amount of $2,500 was due from defendant to the bank on a promissory note of defendant and that plaintiff paid said note for the defendant regardless of the contract.

Upon the issues thus joined the parties went to trial before a jury.

■ At the opening of the trial plaintiff sought and obtained leave to amend by substituting Calistoga Vineyard Company, Limited, a corporation, as party plaintiff in the place and stead of Calistoga Vineyard Company, a copartnership. Appellants here strenuously maintain that error of a prejudicial nature was committed in permitting the change. It was shown that the copartnership had assigned the claim and cause of action to the corporation and had, in fact, made a full and complete assignment and transfer of all of its assets to the latter. It was also shown that the corporation was the copartnership under different form of entity. It was composed of the identical persons theretofore constituting the partnership and carrying on the same business at the same place. In open court the corporation assumed liability for any demand defendant might prove or any judgment he might obtain.

Much discussion of a more or less highly technical nature accompanies appellant's claim for error on this phase of the appeal. We see no error in the substitution. As an assignee, disregarding for the moment appellant's claim for affirmative relief, the corporation had the legal right to pursue the cause of action. (*Giselman* v. *Starr*, 106 Cal. 651 [40 Pac. 8].)

As to appellant's claim that the substituted plaintiff could not be made liable for any judgment defendant might obtain, the fact remains that, after trial, defendant obtained no judgment and consequently any error could not have prejudiced him.

Assuming, however, that defendant has or had a valid claim, the corporation, through its president and attorney, in open court accepted liability and pledged payment. Surely the practice of law is conducted on an honorable basis and where, as here, the corporation was but a change of organization, it would be bound and could not in any future proceeding repudiate the liability assumed.

And, in furtherance of this, the defendant was permitted to and did change and amend his cross-complaint to include as party defendant the corporation, the copartnership and the individuals comprising both organizations.

These preliminaries being disposed of, we may consider the facts as developed at the trial which followed. It was shown that plaintiff and defendant entered into a contract by the terms of which Luchetti agreed to pick, ship and market his entire crop of grapes for the season of 1930 through plaintiff as distributor. Luchetti agreed to care for the fruit until ready for harvest and to prepare and pack and deliver the same in quality and condition suitable for eastern markets.

The plaintiff was to ship and market the fruit in such manner, for account of grower, at such time and place and upon such terms and conditions as would, in plaintiff's judgment, yield the highest maximum returns.

The plaintiff, as distributor, was to pay to the grower the total amount received for sale of the fruit after deducting the charges, listed in detail, and including freight, storage, icing, etc., and the distributor to receive for services ten per cent on all sales made f. o. b. and seven per cent on the gross of all delivered sales. Other terms contained in said agreement became immaterial. The evidence disclosed that defendant delivered to plaintiff about 114 tons of grapes. The plaintiff received the same and under adverse market conditions, due in part to seasonal rains and damaged product, the total net to the grower was something less than $250.

While the season was on, the defendant, being in need of money through the falling due of his note at the bank, requested the plaintiff to take up and pay the note. Said note was in the amount of $2,500 and plaintiff paid this sum to the bank and defendant's said note was canceled.

The verdict of the jury and the judgment thereupon entered in favor of plaintiff was for the difference between the amount advanced on the note and the amount found due defendant on the contract.

■ Appellant urges several grounds for a reversal. First, he argues that the plaintiff, in handling the grapes of defendant, did so mix and intermingle defendant's said grapes that an unfair price was obtained therefor. The argument of appellant is that plaintiff, as a consignee or factor, without authorization of defendant, and without a showing of custom or usage, commingled the grapes of defendant with the grapes of other shippers and disposed of entire shipments thus commingled at an average price. Appellant urges that such conduct amounts to a conversion, rendering plaintiff liable for value of the goods converted.

The general rule is that a factor has no right to do this. However, if custom and usage justify such a course, the rule yields. (*Imperial Valley etc. Assn.* v. *Davidson,* 58 Cal. App. 551 [209 Pac. 58].)

There is sufficient evidence in the record here to establish the custom. Delivery of the grapes was in unmarked lugs or boxes and the method of shipment was in carload quantities. It seemed to be unquestioned at the trial that such was the general usage and no claim of conversion was made in the court below.

■ Appellant also urges that the power or authority of a factor may not be delegated. No evidence before us supports the claim of delegation to any independent brokers or other persons or firms. It is true that in the course of business many buyers were contacted and various branch houses doing business with plaintiff attended to handling, but in no case does there appear any delegation of authority to act save under the express management and control of plaintiff.

The next branch of the appeal is designated by appellant as "Errors assigned as preventing defendant from having the jury properly determine the issues." This branch is again subdivided and we will take up each division as presented.

■ 1. The court erred in refusing to allow evidence of other similar fraudulent representations. In presenting the point for consideration appellant offers portions of the

transcript which show an attempt to prove the fraudulent representations claimed to have been made to other parties. Likewise does he present his offer in the court below. But nowhere in his brief nor in any appendix thereto does he show what representations were made to the defendant. Therefore we have no way of knowing whether or not the trial court erred. Regardless of what representations were made to others, if they were not made to defendant they would be immaterial.

Further the pleadings set up specifically that defendant turned over his grapes to plaintiff upon the fraudulent representation that the plaintiff had many eastern contracts and that defendant would receive not less than $32 for grapes consigned to plaintiff.

On the trial, however, defendant testified that there was no consignment. His testimony was that Turner, on behalf of plaintiff, bought the grapes outright for $32 a ton. The only possible imaginable fraud was in procuring defendant's signature to the contract, and in this connection no representations were made. The testimony of defendant was that Turner never explained what was in the paper to be signed; he just made defendant sign because he wanted the grapes and was afraid defendant might dispose of them elsewhere.

There being then no evidence of fraudulent representations made to defendant, the trial court did not err in excluding testimony of representations made to others. Further, there was not a syllable of testimony that any of the claimed or alleged representations was false or fraudulent.

The most that defendant can possibly claim is that Turner bought the grapes from him and fraudulently procured his signature to a contract of consignment. Evidence that Turner tried to buy grapes from other persons would not be relevant to any issue nor would it be indicative of any fraudulent scheme or plan.

Had there been an attempt to show that Turner had bought grapes from other persons and had thereafter procured signatures to consignment or shipping contracts, the situation would more closely approach the rule permitting testimony of similar frauds. But nothing of this nature is even hinted at. From the record before us and under the issues joined we find no error in this phase of the case.

■ 2. The court erred in granting the motion of cross-defendant for a nonsuit upon the cross-complaint for damages for fraud.

We are of the opinion that the motion was properly granted. The showing of fraud upon which defendant seems to rely is the fact that Turner bought the grapes for $32 a ton and that defendant mistakenly signed a contract of consignment. This was not the cause of action pleaded. When the court granted a nonsuit on the cross-complaint it necessarily addressed the order to the pleading and not the proof. Whatever else defendant's testimony might indicate, it did not support the allegations of his cross-complaint and there was no attempt to amend to conform to the proof.

■ 3. The court committed error in refusing to allow counsel for defendant to argue matters in issue to the jury. The holding of the trial court restricting argument was on the ground that the subject of argument was matter involved in the cross-complaint on which nonsuit was granted.

But, argues appellant, conceding that the attempted argument may have applied to matters already out of the case, at the same time these same matters had equal application to the general issues.

The record discloses little more for complaint. It may be that the trial court was unduly strict, but the fact is the argument had been made when objection was interposed and the ruling of the trial judge was that no further argument along these lines be presented. Yet, in the very next statement of counsel, he argues in a different form, without objection, the subject previously ruled on.

Summing up the entire case after a close analysis of the record we find that in the presentation of the. facts an extreme liberality was allowed each side. Defendant pleaded one defense and tried to prove another. Yet, withal, every fact having any bearing on the issues was brought out.

The jury were fairly and fully instructed inasmuch as not a single argument is made in that connection. From a purely academic standpoint we might concede some error creeping in throughout the record.

The argument was made that defendant was a foreigner entirely ignorant of our language and a man who might be an easy prey for designing persons. The evidence, however,

was such that the jury might readily conclude that he was just the opposite, and a man in all respects more than competent to take care of his own affairs and most capable of understanding exactly the present transaction.

We think that the case was fairly decided and that a reversal here would be contrary to the demand of the constitutional provision.

Section 4½ of article VI provides that no judgment shall be set aside or a new trial ordered unless after an examination of the *entire cause,* including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.

In the instant case the fullest inquiry was had into every possible defense presented, whether pleaded or not, and after the verdict of the jury the case was again presented to the trial judge on motion for a new trial. The issue was simple and, we repeat, the verdict amply supported.

Judgment affirmed.

Pullen, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 2, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1933.