[Civ. No. 17275.   First Dist., Div. One.   July 1, 1957.]

SAM NEIDER, Respondent, v. VIRGIL DARDI, Appellant.

Barnett & Robertson, Phillip Barnett and Rodney H. Robertson for Appellant.

Harold B. Lerner for Respondent.

PETERS, P. J.—In 1949 Sam Neider brought an action against Virgil Dardi and the General Refrigerator Corporation for an accounting. The complaint was founded on a written instrument of joint venture executed by Neider and Dardi. The trial court, after a full hearing, granted an interlocutory decree to Neider, which, among other things, contained an order appointing a receiver to manage the property of the venture until a final accounting could be had. Dardi appealed from the order appointing a receiver. This court affirmed. (*Neider* v. *Dardi*, 130 Cal.App.2d 646 [279 P.2d 598].) The record on that appeal has been incorporated into the record on this appeal.

The present appeal is from the final judgment, which was in favor of Neider. Dardi's principal attack is upon the findings fixing the scope of the joint venture. Admittedly, the joint venture included the management and use of a valuable lease of certain real property. The trial court found that this was all that the joint venture included. Dardi claims that, in addition, the evidence shows the joint venture included a certain refrigerator sales and repair business which turned out unprofitably. If this were included in the accounting Dardi would be entitled to substantial offsets on account of the losses in that business.

The transactions between the parties were complex, and continued over a number of years. The task of the trial court in unraveling the relationships involved was definitely hindered because both parties failed to make a full disclosure of all

relevant facts. The trial court commented on this lack of cooperation and hazarded the thought that both principals probably refused to make a full disclosure because the instant transactions were perhaps founded on prior questionable dealings which, for tax or other reasons, neither party wanted to bring out in the open. (See Rep. Trans. in 1 Civ. 16201, p. 232.) However, enough was disclosed to make it quite clear that the challenged findings are amply supported.

Our drama opens in November of 1937. At that time one Henrietta Brownlie, who owned a life estate in certain property on Mission Street in San Francisco, and others, leased this property to the General Refrigerator Company, a corporation. The property comprised four rental units—numbers 2200, 2202, 2204 and 2212 Mission Street—and an unimproved parking lot. The lease was for 10 years commencing January 1, 1938. The General Refrigerator Company was then solely owned by one Paul Norwitt, who later changed the name of the company to General Refrigerator Corporation. Because another company with that name later appears in the picture, in this opinion the corporation here mentioned will be referred to as the General Refrigerator Company. In 1938 the company subleased two of the units—2200 and 2202 Mission Street —to Neider, the plaintiff in this action, for a term of five years, with an option to extend the term until the master lease between Brownlie and the Company expired. Neider sublet 2200 Mission Street to Dardi, defendant here, and to two others, and sublet to one Engdahl the premises at 2202 Mission Street. These last-mentioned two subleases were negotiated in 1941 and in the same year the respective operations on the two premises were merged.

Thus, in 1941, the corporation, General Refrigerator Company, had as assets the master lease from Brownlie, the sublease of two of the units to Neider, the other two subleases, and also operated a refrigerator business. In this same year the corporation sold to Norwitt all of its assets except the master lease and the subleases. Norwitt assumed all of the liabilities of the corporation and obtained the right to the income from the leases. Thus, at this time, there were two business entities —the General Refrigerator Company, a corporation, holding the leases, and the General Refrigerator Corporation, a sole proprietorship owned by Norwitt and engaged in the refrigerator business. The importance between the two entities is that the master lease proved to be a profitable asset, while the refrigerator business lost money.

In December of 1944 Dardi and his father, through a wholly owned corporation—the Mission Company—purchased from Norwitt for $25,000 all of the capital stock of the General Refrigerator Company, and the stock in trade, good will, equipment and business of the independent refrigerator company. The Mission Company subsequently was dissolved, Dardi's father died, and Dardi became the sole owner of these assets. Starting in 1944, for accounting purposes, Dardi treated both operations as corporate functions, although separate accounts were kept for each. In 1947, for reasons that are not entirely clear, for accounting purposes, the refrigerator operations were divorced retroactively from the leasing operations.

Early in 1947, and prior to May 29th of that year, Dardi negotiated in the name of the General Refrigerator Company a new 10-year master lease to start on January 1, 1948. This is the lease which Neider claims, and the trial court found, was the subject of the joint venture between Neider and Dardi.

Dardi testified that in 1944, before he acquired the corporation and refrigerator business from Norwitt, he and Neider had discussed plans for renewing the master lease. According to Dardi, these talks included discussions of the possibility of Dardi's acquisition of both the corporation and refrigerator business from Norwitt. These discussions led to Dardi negotiating directly with Brownlie for a renewal of the master lease. According to Dardi, Neider was to stay in the background during these negotiations, but was to be a partner with Dardi in both the corporation and the refrigerator business.

Neider did not agree with this version of the facts. He testified that in 1945, after Dardi had completed his transactions with Norwitt, he, Neider, and Dardi discussed the practical advantages of not competing with each other for a renewal of the master lease with Brownlie, and came to an agreement in this respect. It is this agreement that is the basis of Neider's claim against Dardi. He disclaims any interest in either the leasing corporation or in the refrigerator business.

As a result of these discussions the parties executed two instruments. One of these, dated May 29, 1947, provides that if either Dardi or Neider, or their representatives, secure a renewal of the lease he "guarantees to the other party hereto an undivided one-half interest in such lease." It was further provided that the parties assumed joint responsibility for the performance of the lease. The second and separate instrument was also executed by the two men on May 29, 1947. This

document is entitled "Agreement and Option." It recites that Neider "has heretofore advanced" to Dardi "the sum of $12,500.00 to assist" Dardi in acquiring all of the stock of the corporation, and that in consideration of this Neider is granted a 10-year option to purchase from Dardi for one dollar, 50 per cent of the stock of the General Refrigerator Company. This agreement also provided that, starting as of date, each of the parties should nominate one of the three directors of the company, and that these two should select the third director, but, failing agreement upon the third director, the Board of Directors should consist of but two directors. The agreement contains a release of Dardi by Neider of any obligation to repay the $12,500.

Dardi's major contention is that the joint venture outlined in the first agreement of May 29, 1947, encompassed both the refrigerator business and the corporation and its interest in the master lease. He admits that Neider has a joint interest in the profits of the master lease, but contends that the accounting between the two must include an offset for the losses of the unsuccessful refrigerator business. Neider claims only a joint interest in the lease.

The trial court made detailed findings. It found that Dardi purchased both the stock of the corporation and the refrigerator business for his own account; that Neider had no interest in either enterprise; that by reason of the first agreement mentioned above Neider obtained an undivided one-half interest in the new master lease with Brownlie; that the option given Neider in the second agreement discussed above had never been exercised by him; that as a result Neider had no interest in the corporation; that Dardi did not properly account to Neider for the income from the master lease, but converted the same to his own use. The court concluded that Neider should have a judgment against Dardi for at least $30,000, the exact amount to be determined after an accounting by a receiver appointed by the court to manage the property until the termination of the master lease.

In July of 1954, before the final judgment was entered, Brownlie, who was the life tenant of the property, died, and thus the second master lease was terminated. In May of 1955, after a final accounting by the receiver, the trial court made supplemental findings based on that accounting and entered its judgment for Neider for about $35,000, plus interest from certain fixed dates. All expenses of the receivership were assessed against Dardi.

On this appeal Dardi attacks many of the findings as being unsupported. His main attack, however, is upon the finding that Neider was not responsible for one-half of the losses of the refrigerator business. This presents purely a factual question upon which the evidence was conflicting. Dardi did present evidence, which, if believed, would have supported a finding in his favor. Dardi relies upon some ambiguous language in the two instruments already discussed and upon his oral testimony to support his version of the relationship between the parties. He also relies upon the corroborating testimony of the lawyer who represented Norwitt in the Norwitt-Dardi transaction and who later became the counsel for Dardi. This lawyer testified that at the time the two agreements were signed Neider's attorney stated that Neider would pay one-half of the properly certified net losses of the refrigerator business, and that on two subsequent occasions Neider had claimed that he had $12,500 invested in the "General Refrigerator business." Dardi also calls attention to the fact that the corporation executed to Brownlie a chattel mortgage to secure the faithful performance of the master lease. This mortgage was executed in lieu of a $5,000 bond called for by the lease. Dardi testified, and Neider did not deny, that the substitution of the mortgage for the bond was suggested by Neider. This chattel mortgage covered all the personal property on the leased premises, including that of the refrigerator business. From this Dardi infers that Neider must, therefore, have had an interest in the refrigerator business. Dardi finds some support for this inference in the testimony that Neider consented to a new roof for the premises being purchased from the proceeds of the master lease, and in certain conversations Neider had with Dardi and representatives of Dardi regarding the financial affairs of the corporation and refrigerator business. There is no need to review this or other testimony at further length. It would have supported a finding in Dardi's favor. But that is not the question. The question is, whether the finding that Neider's only interest was in the lease is supported. If so, Dardi's testimony did no more than create a conflict.

Neider's version of the agreement was that his only interest was in the master lease. He was positive that he had no interest in the corporation or the refrigerator business. He refers to the first instrument discussed above that was executed on May 29, 1947, which grants him an undivided one-

half interest in the master lease, should one be secured, and makes no mention at all of the corporation or of the refrigerator business. He testified that in 1945 he suggested to Dardi, who he then knew controlled the corporation and its assets, that it would be advantageous to both him and Dardi if they did not compete for a new master lease, the old one being due to expire at the end of 1947. He did not know on May 29, 1947, that Dardi had already negotiated a new master lease with Brownlie, being unacquainted with the leasing activities of Dardi. He explained the recitation in the agreement and option that he had advanced $12,500 to Dardi to "assist" Dardi to acquire the stock of the corporation by testimony that in a previous "liquor deal" he had rendered services entitling him to compensation of between $12,500 and $15,000 from Dardi, and that he wanted to use this unpaid compensation as consideration for the shares in the corporation, if he should decide to buy into that company. Thus, the second agreement provided for an option. But after he had examined the tax aspects of the deal he decided that it would be unwise to exercise the option. He pointed out that, had he exercised the option, he would have had to pay income tax on the $12,500 upon his receipt of the stock, and also an income tax on the earnings of the company, and a further tax on any dividends received by him. At any rate, the parties agreed at the trial that Neider never gave Dardi $12,500 and that no stock in the corporation was ever delivered to Neider. He had no objection to the master lease being in the name of the corporation, so long as the corporation held it as his fiduciary. Neider testified: "I was not interested in going into the refrigerator business. My business is not operating places, but leasing places, and he tried to urge me to come in with him and buy it, and I told him I was not interested in it. It was only in 1945 that I even considered having any part of the General Refrigerator Corporation."

Some correspondence between Dardi and Neider is ambiguous, in some respects supporting each party to the controversy.

The accounting approach to the enterprises which was determined by Dardi tends to support Neider's version of the extent of his interest. The court-appointed accountant testified that Dardi told him that since he had acquired the corporation its only activity was to lease and sublet the premises. For this reason retroactive entries were made which divorced the leasing operations from the refrigerator busi-

ness, Dardi and his father conducting the latter as a partnership. It also appears that in 1949 Dardi sold the refrigerator business without consulting Neider, and retained his stock in the corporation.

Once the tangled affairs of the two enterprises are separated, it is quite apparent that the question as to the extent of Neider's interest, and whether it included the refrigerator business, was purely a factual one on which the evidence was conflicting. ■ The writings relating to the scope of the joint venture are sufficiently ambiguous to justify the introduction of extrinsic evidence in support of their interpretation. Since this extrinsic evidence is in substantial conflict, any reasonable construction of the trial court must be upheld. (*Estate of Rule,* 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319]; see cases commented on 3 Witkin on California Procedure, p. 2253, § 89.)

It is true that the evidence in the record leaves many pertinent questions unanswered. It is difficult to understand why Dardi on May 29, 1947, agreed to a joint venture in the lease, when, earlier that year, he had already negotiated a renewal of this profitable lease in the name of his corporation. It is also difficult to determine what the actual consideration was for the joint venture agreement. The mutual promises of the parties not to compete, although legally constituting consideration, seem to have been of no actual value to Dardi who already had, unknown to Neider, negotiated a renewal. It is quite clear that neither of the parties was entirely frank. Portions of the true story as to the actual relationship of the parties were suppressed. Perhaps the parties were disturbed over the tax consequences of their relationships, or perhaps the parties had prior dealings of a type they did not want to disclose. The trial court suggested both of these possibilities. ■ However incomplete the record may be, the fact remains that the trial court's basic finding as to the scope of the joint enterprise finds substantial support in the record.

■ Dardi argues that, assuming the joint enterprise involved the master lease only, nevertheless the accounting was inaccurate because no deduction was made from Neider's share of the profits of the $12,500 mentioned above, and no deduction was made for certain taxes paid by the corporation on the revenue of the lease.

The contention that Neider's account should be charged with $12,500, which represents one-half the cost of acquiring

the enterprises from Norwitt, is clearly unsound. Once it is determined that Neider had no interest in the corporation or refrigerator business, obviously he should not be charged with one-half the cost of their acquisition. Neider's interest was in the master lease only, which was acquired without initial capital outlay.

The argument that franchise and state and federal income taxes assessed to the corporation should be deducted from the gross income of the master lease before the division of profits was made, is equally fallacious for the same reasons stated above. These were expenses of the corporation or of Dardi, and were not expenses chargeable in part to Neider. If Neider's interest was solely in the master lease it is obvious that no corporate expense was chargeable to him. Neider will have to pay taxes on the basis of the income received by him, regardless of what tax was paid by Dardi.

Other findings are attacked as erroneous or as unsupported. We have examined these findings. Although some of them may contain inaccuracies, and others may not be supported, these errors relate to minor matters and could not possibly have been prejudicial. ■ The contention that certain findings as to the amount of gross rentals collected by Dardi are unsupported is clearly erroneous. The court-appointed accountant's report contains the precise figures contained in the findings, and that report sustains the findings.

■ Dardi objects to the exclusion of certain oral evidence offered on the cross-examination of Dardi as to the scope of the joint enterprise. No doubt the ruling of the trial court excluding such evidence of the oral negotiations was erroneous. As already pointed out, the two documents executed on May 29, 1947, were sufficiently ambiguous as to the scope of the joint venture as to warrant the introduction of parol evidence. Prior to this erroneous ruling, however, both parties had opened up the subject of the prior oral negotiations and both covered the subject in some detail. The oral negotiations had been fully discussed, and the proffered testimony would merely have been cumulative. Its exclusion, although erroneous, could not have been prejudicial.

Dardi also contends that the trial court, on two occasions, improperly excluded testimony by his attorney as to what was said on May 29, 1947, just prior to the execution of the agreements. Contrary to Dardi's contention one of the questions, over objection, in fact was answered. (Rep. Trans., 1 Civ. 16201, pp. 203-204.) The answer to the other question

was improperly excluded, but, again, no prejudice was shown. The succeeding examination of the witness covered the same ground as the excluded question, and, as already pointed out, other admitted testimony completely covered the field of the prior negotiations of the parties.

■ The last contention of Dardi is that the court in its final judgment erroneously assessed all of the costs of the receivership against him. ■ It is well settled law that the award of costs in an equitable action is within the discretion of the trial court. ■ Here the court was justified in finding that Dardi was guilty of reprehensible conduct and that the costs should be assessed against him. (*Estrin* v. *Fromsky*, 53 Cal.App.2d 253 [127 P.2d 603].)

The judgment and decree appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.