### W. R. WARFIELD v. J. S. CLARK, Appellant.

118　69
f144　622

**Action for Deceit:** INSURANCE: FALSE STATEMENT. The sworn statement of the financial condition of an insurance company required by law to be filed with the auditor of state is for the protection of the individual members of the public, and one purchasing stock in an insurance company whose statement is so filed has a right to rely thereon, and maintain an action for deceit against the officer making the same for damages caused by fraudulent statements therein.

**Same:** UNADJUSTED LOSSES. An estimate of the amount due from an insurance company for unadjusted losses is all that such statement is required by statute to contain, and an action for deceit cannot be based thereon.

**Evidence:** MATERIALITY. Evidence of fraud must be confined to the matters contained in the statement relied upon.

**Measure of Damages.** The measure of damages in this action is the difference between the market value of the stock at the time of purchase, and what it would have been worth if the condition of the company had been as represented.

Instructions: INTENTIONAL FRAUD. This action is for intentional fraud, and an instruction which charged the defendant with knowledge of the condition of the company, and, if the statement made by him was incorrect it was known to him to be false, is erroneous.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

TUESDAY, OCTOBER 14, 1902.

ACTION at law to recover damages for fraudulent representations as to the financial condition of a corporation. Trial to a jury, and verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Thomas A. Cheshire* for appellant.

*Read & Read* for appellee.

SHERWIN, J.—This action is based upon an alleged false statement as to the financial condition of the Des Moines Insurance Company, filed with the auditor of state under the provisions of section 1714 of the Code. The defendant was the then secretary of the company, and signed the statement which was so filed. The plaintiff bought stock in the company of other stockholders than the defendant, without consultation with him, and without an examination of the books and affairs of the company through its office, but relied, as he claims, on the statement so signed and filed by the defendant. The controlling question in the case is whether an action of deceit may be maintained against the defendant predicated on this statement. Section 1714 of the Code provides that fire insurance companies organized or authorized to do business in this state "shall annually, on the first day of January of each year, or within thirty days thereafter, prepare under oath and file with the auditor of state a full, true and

complete statement of the condition of such company on the last day of the preceding month, and that such statement shall specify losses adjusted and due; losses adjusted and not due; losses unadjusted, those in suspense and the cause thereof, and those resisted and in litigation." And section 1715 provides "that the auditor of state shall withhold his certificate or permission of authority to do business from any company neglecting or failing to comply" with this provision of the law. If the purpose of this annual statement were solely for the information of the auditor, to enable him to determine whether or no a certificate or permission should be given the company to do business, it might well be said that it was not a statement which was made for the purpose of influencing the mind of the public, or of inducing individuals of the public to act upon it. That one of its purposes was to so advise the auditor must be conceded, for without such statement no certificate would issue, and the company could not do business. But section 1720 of the Code provides that the auditor shall cause the information contained in such statements to be arranged and prepared in a single document for printing, "which report shall be made to the governor on or before the first day of May of each year." Nor is this all the publicity which is to be given to these statements, for sections 125 and 126 of the Code expressly provide for the printing and distribution of the annual reports of the auditor pertaining to insurance. Nor is this the only means provided for the conveyance to the public of the information required in these statements, for section 1737 of the Code provides further for the publication by the companies themselves of "a certificate from the auditor that such company * * * has complied with the law," and that said certificate shall "contain a statement made up from the annual report of said company of the * * * aggregate amount of assets and liabilities at the date of such report." From

1. ACTION for deceit: insurance: false statement.

these requirements of the statute it is manifest that the legislature deemed it of great importance that the exact financial condition of such companies be given as wide publicity as possible, and no reason for so doing is apparent other than the protection of the individual members of the public who might be solicited or desire to transact business with the companies. Insurance companies know that their reports are thus made public, and it is not going too far to say that they make them as favorable to their interests as the facts will warrant, for the express purpose of inducing public confidence, and by so doing to increase the volume of their business. It follows, then, that so far, at least, as buying insurance is concerned, any person has the right to rely and act upon such reports as fully as he would were they personal communications to him, and "to treat them as frauds upon him if in fact he was deceived to his damage." Cooley, Torts, 494; 14 Am. & Eng. Enc. Law (2d. Ed.) 150; Cook, Stock, Stockh. & Corp. Law (2d Ed.) section 352; *Morse v. Swits*, 19 How. Prac. 275; *Cross v. Sackett*, 2 Bosw. 617; *Gerner v. Mosher*, (Neb.) 78 N. W. Rep. 384 (46 L. R. A. 244). In *Hunnewell v. Duxbury* (Mass.) 28 N. E. Rep. 267 (13 L. R. A. 733),—the principal case relied upon by the appellant,—it was held that the certificate required by the state from a foreign corporation was "not addressed to or intended for the public," and that its statements were "in no fair sense addressed to the plaintiff." We think the principle there announced is correct, but it is based upon a statute not nearly as broad in its requirements as our own, and hence it is not applicable to this case, so far as it touches the questions we have already discussed. It is said, however, that in the purchase of stock from a third person the plaintiff had no right to rely upon the representations made in the statement sworn to and filed by the defendant. If the defendant in fact falsely reported the financial condition of his company for the purpose of deceiving the public in rela-

tion to its responsibility as an insurer, it seems clear to us that we should not say as a matter of law that he only in. tended to wrong that particular class, and that those dealing in its stock were not his intended victims; for he knew that stock in such companies was often bought and sold, and that reliance might be placed upon his sworn statement by those dealing therein. See authorities heretofore cited. Finally it is said that, because the statement was not in fact published at the time he bought, he had no right to the information it contained. But it was filed in a public office, for a public purpose, and the fact that he gained his information in advance of its printed publication and distribution does not seem to us material. It was published, as to him, when he read it, and was later furnished to the general public just as it then appeared.

II.  Of the 501 other errors assigned we shall specifically notice but few.  As to losses adjusted and due and losses adjusted and not due, there ought to be no trouble in making a definite and positive statement, for the adjustment of a loss must necessarily mean a settlement of the amount to be paid therefor.

2. SAME: un- adjusted losses.

But as to losses unadjusted, those in suspense, and those which are resisted and in litigation, we think the statute does not contemplate a report which shall necessarily specify the amount claimed by the assured.  In case of a judgment against the company for a loss, it may be said that the amount of liability is fixed; but where a final determination as to the amount has not been reached, and it is in dispute, a candid and fair estimate of the liability of the company is all that is required.  This is apparent from an examination of the eighth subdivision of section 1714, where it is provided that expenditures for the preceding year shall be specified, and "the amount of losses paid during said time stated,  *  *  *  how much subsequent to the date of the preceding statement, and the amount at which such losses were estimated in such statement."

This must mean that the statement as to these matters may be estimated, and that is nothing more or less than an expression of opinion as to the liability thereon, and, of course, an action of deceit cannot be predicated thereon.

III. Whether or not the plaintiff relied upon the statement in making his purchase of stock was a question for the jury.

IV. Testimony as to transactions after the 31st day of December, 1897, was immaterial, except so far as it showed the falsity of the statement. The statement should 3. EVIDENCE: show all matters which might affect the finan-materiality. cial condition of the company arising before December 31st, whether notice thereof before that time had reached it or not. In other words, a loss occurring before December 31st should be reported if the company receives proper information thereof before filing the statement, for in no other way can the condition of such company at that time be determined.

V. The court instructed the jury that the measure of the plaintiff's damage was his *pro rata* share of the difference between the actual amount paid for losses incurred 4. MEASURE before December 31st and the amount claimed of damages. therefor as given in the statement filed, less the amount received for reinsurance. This instruction, in effect, fixed an arbitrary value on the stock on the 31st of December, and was erroneous. Shares of stock in a corporation are entirely distinct from the property of the corporation, and a shareholder has no distinct and individual title to any part or parcel of the corporate property. His shares represent a right to participate in profits only, and as long as the corporation is a going concern a stockholder can only demand such dividends as may be from time to time declared by the corporation. The business of such concerns fluctuates, and the book value of stock may change from day to day as it had in this case changed between the 31st day of December and the 12th day of April,

the time of the plaintiff's purchase; and, while losses might occur today, profits might be greatly increased to-morrow, and by this process of equalization the market value of the stock be not changed. The plaintiff had no right to have a dividend declared based on the condition of the company either at the time he purchased or as its affairs actually or as represented stood on the 31st day of December; yet under the rule laid down by the trial court the defendant was charged with profits which might or might not exist and be realized by the stockholders in the future, but such damages are too remote and uncertain. The true rule of damage is the difference between the market value of the stock at the time of purchase and what it would have been worth if the condition of the company had been as represented. This is all that the plaintiff can claim, for, if the market value of his stock was not affected by the alleged false statement, he has suffered no loss for the reasons heretofore stated. This principle is sustained by the following cases: *Gates v. Reynolds*, 13 Iowa, 1; *White v. Smith*, 54 Iowa, 233; *Howes v. Axtell*, 74 Iowa, 400; *Doran v. Eaton* (Minn.) 41 N. W. Rep. 244. For the reasons above stated, it was error to reject testimony as to the market value of the stock.

VI.  The jury was told as a matter of law that the defendant was charged with knowledge of the true condition of the company on the 31st day of December, 1897, and that, if the statement filed by him did not correctly report its condition, it was untrue and false, and so known to be by the defendant. This instruction cannot be sustained. This action is founded on active and conscious misrepresentation as to the condition of the company, and can only be sustained by proof of intentional fraud. It cannot be predicated on negligence, however gross. *Boddy v. Henry*, 113 Iowa, 462; *Kountze v. Kennedy*, 147 N. Y. 129 (41 N. E. Rep. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651;) Cook Stock, Stockh.

5.  INSTRUC-
TION: inten-
tional fraud.

& Corp. Law, (2d Ed.) section 355; Bishop, Noncontract
Law, section 316.   And for this reason testimony that the
defendant was acting under the advice of counsel and of
the auditor of state was competent and material, as was
also his own testimony as to his intent.   *Counselman v.
Reichart*, 103 Iowa, 430.

In its fourth instruction the court told the jury that,
if it found a substantial difference between the actual and
reported losses, it should find that the defendant intended
to deceive and defraud.   This was error, for it not only
invaded the province of the jury on a question of fact, but
announced an incorrect proposition of law, as we have
heretofore said.

For the errors indicated, the judgment is REVERSED.