[Civ. No. 23326. Second Dist., Div. Three. Apr. 20, 1960.]

MARTIN F. SCHAEFER, Appellant, v. SAMUEL BERIN-STEIN et al., Defendants; ELBERT, LTD. (a Corporation) et al., Respondents.

[Civ. No. 23360. Second Dist., Div. Three. Apr. 20, 1960.]

JAMES TERRY, Appellant, v. ROBERT E. ROSSKOPF, as Executor, etc., et al., Respondents.

Albert Vieri and Walter Monarch for Appellants.

Gizella L. Allen, in pro. per., Glen Behymer, Robert E. Rosskopf and Ralph W. Hoffman for Respondents.

FORD, J.—Two appeals are before this court. They will be considered together since the two actions were tried together in the trial court. Each case has been before this court on a prior appeal with respect to the sufficiency of the pleadings of the plaintiff. (*Schaefer* v. *Berinstein,* 140 Cal.App.2d 278 [295 P.2d 113]; *Terry* v. *Bender,* 143 Cal.App.2d 198 [300 P.2d 119].) Herein reference will be made to them as the Schaefer case and the Terry case, respectively.

In each instance, the appeal of the plaintiff is from the judgment, from the order denying a motion for a new trial, from the order denying a motion for a different judgment on the findings, and from the order denying a motion made before judgment for leave to amend the complaint so as to seek attorneys fees.

An appeal does not lie from an order of the trial court denying permission to amend a complaint (*Kline* v. *Beauchamp,* 29 Cal.App.2d 340, 342 [84 P.2d 194]), but such order is reviewable on the appeal from the final judgment in the action. (*Fuss* v. *City of Los Angeles,* 162 Cal.App.2d 643, 646 [328 P.2d 831].) The same is true with respect to each appeal from an order denying a motion for a different judgment since such motion was based on grounds which existed before the entry of judgment and which are available on the appeal from such judgment, the purpose of the motion being to obtain a change in the decision of the court upon the same facts. (*Litvinuk* v. *Litvinuk,* 27 Cal.2d 38, 44 [162 P.2d 8].) The order made in each case denying a motion for a new trial is not appealable. (*Singleton* v. *Perry,* 45 Cal. 2d 489, 500 [289 P.2d 794].)

The nature of the complaint in the Schaefer case is set forth in the opinion on the prior appeal and need not be here repeated. Briefly stated, Schaefer, suing in a representative capacity as a taxpayer, sought relief on the ground that certain municipal transactions were void. The findings of fact of the trial court were as follows: 1. The city of Compton has been a chartered city since July 1, 1925. 2. The plaintiff has been a resident and taxpayer of the city for a period of time beginning more than one year prior to the commencement of the action; that prior to the time he instituted the action, he demanded that the city council cause an action to be filed with respect to the subject matter but the city council refused to do so; and that the plaintiff commenced the action on behalf of himself and other taxpayers of the city. 3. On and after October 19, 1937, the defendant John

F. Bender,[1] an attorney at law, was employed by the city as special city attorney under written contracts and at the time of the commencement of this action he was employed by the city under a written contract dated January 11, 1944. 4. For the period from a time prior to October 19, 1937, to June 30, 1953, the defendant Adams was the city treasurer. 5. During the period from October, 1940, to about March, 1952, the defendant Allen, an attorney at law, was employed by Bender to perform legal services, including legal services on behalf of the city. 6. The defendant Ann Sipe was employed by Bender as a legal secretary from and after 1941; her husband, Frank R. Sipe, was employed by Bender from 1944 to 1948 as an independent contractor to perform non-legal services, including such services on behalf of the city; for one year beginning in 1945, Frank R. Sipe was employed by the city on a part-time basis as right of way agent. 7. The defendant Elbert, Ltd., was a California corporation and the owner of rights evidenced by street improvement bonds, certificates of sale and deeds on real property, including property in the city. 8. The defendant Helen E. Bender was the former wife of Bender. 9. The defendant Annette Marie Alzola was the wife of defendant John M. Alzola. 10. On and after October 19, 1937, a large percentage of the land located in the city was encumbered with special assessment liens and with liens for city and county taxes and assessments, and said lands had been removed from the tax rolls; subsequent to October 19, 1937, the city purchased from the state of California tax deeds covering real property in the city and thereafter the city, under authority and direction of the city council, instituted proceedings to clear title to said properties, and to sell the interest of the city therein, both with and without merchantable title. 11. On August 24, 1943, September 1, 1944, February 13, 1945, and June 5, 1945, Bender purchased from the city, without merchantable title, quitclaims of its interest in certain real properties, title being taken in the name of John M. Alzola as nominee for Bender; each purchase was made with knowledge on the part of the city, the city council and officials that Bender was the purchaser, and the city council received legal advice in each case and consented to the purchase by Bender in the name of such nominee.

---

[1]The judgment in each case was entered on March 3, 1958. Bender died in June of 1959. On July 17, 1959, there was a substitution of Robert E. Rosskopf, as executor of the estate of John F. Bender, deceased, as defendant in lieu of Bender.

12. After payment of the purchase price in each sale, the city executed and delivered to Bender its quitclaim deed to the respective parcels of property in the name of the nominee; the deeds were respectively dated and recorded in the office of the county recorder or registered in the office of the registrar of titles as follows: a. December 29, 1943, registered June 8, 1944. b. January 16, 1945, registered March 26, 1945. c. October 23, 1945, recorded October 26, 1945. d. January 22, 1946, recorded January 30, 1946. 13. After such purchases, Bender, for valuable consideration, sold the real properties, or interests therein, to others including Adams. 14. Such transfers were by documents bearing various dates from February 19, 1945, to June 22, 1951, which were respectively registered or recorded within a period of time not exceeding two months after the date of the particular document. 15. Adams and Bender "now own as tenants in common, each an undivided one half interest," certain of the properties. 16. Between September 12, 1944, and June 22, 1948, the defendant Elbert, Ltd., purchased from the city for its own account, and not as agent for, or under agreement with, any other person, quitclaims of the interest of the city in approximately 130 separate parcels of real property; the transfers were without merchantable title; at the time of each purchase which was made after January 1, 1945, the city, the city council and officials had knowledge that Elbert, Ltd., had employed Bender to perform legal services in matters connected in part with purchases of properties from the city; the city council received legal advice and consented to such purchases. 17. Thereafter, for valuable consideration, the defendant Elbert, Ltd., sold its interest in certain properties so purchased in 1947 and 1948 to Bender and others; such properties were thereafter sold by the respective grantees prior to the commencement of this action; each of the properties so sold by the defendant Elbert, Ltd., was sold for value and as a separate and independent transaction; each was purchased from the city by Elbert, Ltd., without any advance understanding or agreement with any defendant to later resell the same to any defendant; Elbert, Ltd., did not allow its name to be used in any purchase by or for the account of Bender and no property was bought by Elbert, Ltd., for the account of any defendant; no fact in connection with any purchase by Elbert, Ltd., was concealed from, or unknown to, the city at the time when the respective purchases and sales by Elbert, Ltd., occurred; that there was nothing affecting the transactions

between Elbert, Ltd., and the city within the peculiar knowledge of Elbert, Ltd., which was concealed from or misrepresented to the city. 18. On July 3, 1945, and February 26, 1946, the defendant Allen purchased from the city, without merchantable title, quitclaims of its interest in certain real properties; title to each of such properties was taken in the name of Grayce W. Webster, as nominee for Allen; each of such purchases was made with the knowledge of the city, the city council and officials that Allen was the purchaser and the city received legal advice and consented to such purchases being made by Allen in the name of such nominee. 19. The city executed and delivered to Allen its quitclaim deed to each of such properties, conveying the interest of the city therein to Grayce W. Webster; such deeds were respectively dated and recorded in the office of the county recorder as follows: a. June 12, 1946, recorded June 25, 1946. b. June 25, 1946, recorded June 28, 1946. 20. Thereafter Allen sold to Bender an undivided one-third interest and to Adams an undivided one-third interest in such properties; such transaction was embodied in a deed executed by Grayce W. Webster on April 11, 1947, and recorded on June 25, 1947, in the office of the county recorder, the remaining one-third interest being conveyed thereby to Allen; on or about April 30, 1947, for a valuable consideration, Adams, Bender and Allen leased the property, with an option to purchase, to Oil Base, Inc., and the lessee has occupied the property continuously since that date, has placed extensive improvements thereon, and has exercised its option to purchase. 21. All of the above-mentioned sales of real property by the city were conducted after giving notice of intention to sell by first publishing notice once a week for three consecutive weeks in the official newspaper of the city, which notice contained a description of the property intended to be sold and stated that bids or offers therefor would be received in the office of the city treasurer, and that such bids or offers must be in writing and filed in the office of the city treasurer within one year after the publication of said notice; certain bids were received after the expiration of one year from the publication of such notice and the city council thereafter acted upon and accepted certain of such bids; however, in every sale a written bid was filed and submitted to the city council and additional bids were called for in an open meeting of the city council; every bid accepted by the city council was the highest and best bid received for the respective property being sold and each sale was accepted and approved by

resolution of the city council entered in the minutes of the meeting. 22. At all times since the purchase of the respective properties from the city by defendants to and including the time of commencement of this action, the defendants and their successors in interest have paid all taxes and assessments levied and assessed against the respective properties and at no time since the sale of the respective properties by the city has the city been seised or possessed of any of the properties. 23. With respect to the Bender purchases of August 24, 1943, and September 1, 1944, at all times since March 26, 1945, those lots have appeared of record in the names of Adams and Bender in the records of the county registrar of titles, and in the record ownership files in the Compton city hall, upon the county real property assessment roll, and upon the city lighting assessment roll; the property is unimproved but on various occasions since March 26, 1945, the property has been used by Adams and Bender and their tenants for the display and sale of Christmas trees; Adams and Bender have never concealed from any person their ownership of the property or the method of acquisition thereof, but those matters have been known to the city, the city council and officials at all times. 24. With respect to five of the six lots of the Bender purchase of February 13, 1945, at all times since September 13, 1946, the lots have appeared on the records of the county recorder, on the ownership records of the city, on the lighting assessment rolls of the city, and on the real property tax rolls of the county in the names of Adams and Bender; a factory building was constructed upon that property at the instance of Adams and Bender in 1947 and is still there; in 1948 the property was rezoned by virtue of a city ordinance; in January, 1950, Bender, as owner, applied to the city planning commission for a special zone variance and public hearings were held with respect to that application by the city planning commission and by the city council; written protests were filed by citizens of Compton and oral protests were made at the public hearings; the variance was granted; in the news columns of the Compton Herald, a newspaper of general circulation, appeared news items as to the public hearings and reporting that the application was being presented by Bender as owner of the property; for more than five years prior to the commencement of this action Adams and Bender, by themselves and their tenants, were in the continuous, open, notorious and exclusive possession thereof under claim of ownership and paid all taxes and assessments

levied and assessed thereon; neither Adams nor Bender at any time or in any manner concealed from the city or any person their ownership or method of acquisition of that property and such matters have been known to the city, the city council and officials at all times. 25. At all times since June 25, 1947, the Allen purchases have appeared in the names of Adams, Bender and Allen on the records of the county recorder and on the ownership records of the city; beginning April 30, 1947, the property has been extensively improved by factory buildings, fences, tanks and manufacturing equipment; for more than five years prior to the commencement of this action, Adams, Bender and Allen, by themselves and their tenants, were in the continuous, open, notorious and exclusive possession of the property under claim of ownership and paid all taxes and assessments levied and assessed thereon; none of those three persons at any time or in any manner concealed from the city or any person their ownership or method of acquisition of the property and those matters have been known to the city, the city council and officials at all times. 26. Prior to the purchase of any property from the city by Bender or Allen, the city council had obtained legal advice that neither the city charter nor any other provision of law prohibited any official or employee of the city from purchasing any property from the city; the city, its officials and employees relied upon such advice, and, both before and after the transactions herein mentioned, sales of city property were made by the city to officials and employees of the city. 27. There was no conspiracy among the defendants, or any of them, to defraud the city. 28. While in several instances persons and corporations, including Elbert, Ltd., who had employed Bender as an attorney, purchased real property from the city, Bender did not represent any of such persons or corporations in any negotiations or transactions with the city; such sales were negotiated and made by the city to such persons and corporations with the knowledge on the part of the city, the city council and officials that such persons and corporations had employed Bender as their attorney and such sales were made by the council in open council meetings upon the highest bids received for the property being sold and after calling for bids. 29. The city council and officials of the city did not rely exclusively on the advice of Adams and Bender, or either of them, for the facts and law concerning the sales of land by the city; neither of them dictated the policy of the

city council or the method of sales of land by the city; that policy was formed by the city council and the sales made by the city were made in accordance with such policy. 30. Bender, with the knowledge and consent of the city, the city council and officials received attorneys fees as provided under the agreement of January 11, 1944, upon the properties sold by the city to the defendants; all of such sales were held more than four years prior to the commencement of this action. 31. On or about August 25, 1953, Frank G. Bussing was the mayor and a member of the city council; on or about that date Bender agreed to loan and thereafter did make a loan to Bussing of certain funds to be used for the purchase and improvement of certain real property; the loan was evidenced by a promissory note secured by a deed of trust on such property; the note was never paid and there was a foreclosure under the deed of trust; the property is now owned by Bender; Bussing resigned as mayor and as a member of the city council on or about December 31, 1956; in the making of the loan to Bussing, Bender intended to interfere with the proper discharge by Bussing of his official duties. 32. Bender continued to render legal services and to advance costs on behalf of the city under the contract of January 11, 1944, up to the date of the trial of this action; there has been earned and remains unpaid to Bender under that contract for legal services rendered by him prior to August 25, 1953, upon properties sold by the city or appropriated by the city to public use prior to August 25, 1953, the sum of $15,121.02; Bender has advanced costs on behalf of the city upon such properties, for which he has not been reimbursed, in the sum of $3,903.87; upon properties sold by the city or appropriated by it to public use after August 25, 1953, there remains unpaid to Bender for legal services under the contract the sum of $6,105 and, for costs, the sum of $1,157.29; upon properties which have not been sold or appropriated to public use by the city and are still owned by the city, Bender has advanced costs for which he has not been reimbursed in the sum of $340.88. 33. The defendants have been prejudiced by the delay in the commencement of this action in that a large number of the records and files concerning the transactions complained of and the real property involved have become lost or destroyed; witnesses familiar with the facts of such transactions are now deceased or no longer available; the details and facts of such transactions have been lost to the memory of the witnesses who were familiar there-

with at and within a reasonable time after the occurrence of the events; the values of the properties have substantially changed since the occurrence of such transactions; the defendants and all persons dealing with the real properties involved have dealt therewith in reliance upon the validity of all transactions with the city concerning the same. 34. The city council and officials of the city for more than four years prior to the commencement of this action had knowledge of facts and circumstances sufficient to require a prudent man to make inquiry concerning all transactions between the defendants and each of them and the city; by prosecuting such inquiry they would have learned the facts concerning all transactions between the defendants and each of them and the city.

Based upon such findings of fact, the trial court reached the following conclusions of law: 1. The demand by the plaintiff that the city commence an action against the defendants was properly refused. 2. There was no conspiracy to defraud the city. 3. All matters and facts concerning dealings between the defendants and each of them and the city were known, or with due diligence could have been known, to the city and to its council and officials more than four years prior to the commencement of this action. 4. The city was not seised or possessed, within five years prior to the commencement of this action, of any of the real properties above described as the Bender, Allen and Elbert, Ltd., purchases. 5. The city and the citizens and taxpayers thereof have been guilty of laches and are barred and estopped from prosecuting this action. 6. Adams and Bender, as to the Bender purchases of August 24, 1943, September 1, 1944, and, as to five lots, of February 13, 1945, and Adams, Bender and Allen, as to the Allen purchases, were for more than five years prior to the commencement of this action in the sole, adverse and exclusive occupancy and possession, under claim of ownership, of such properties, and paid all taxes and assessments thereon. 7. The agreement between Bender and the city of January 11, 1944, should be cancelled as of August 25, 1953. 8. Bender is entitled to recover from the city under the contract all costs advanced by him for the city up to the time of trial and all fees for services rendered to the city prior to August 25, 1953, with respect to properties sold by the city or appropriated to public use by the city prior to August 25, 1953, but he is not entitled to recover

fees for any services rendered on or after August 25, 1953. 9. Every cause of action, except the cause of action for declaratory relief, is barred by the statute of limitations and particularly by the provisions of section 337, subdivision 1, section 338, subdivisions 1 and 4, section 339, subdivision 1, section 340, subdivision 1, sections 343, 318, 319 and 320 of the Code of Civil Procedure. 10. Neither the plaintiff nor the city is entitled to any relief against any defendant except as herein provided. 11. Each party should bear his own costs. Judgment was entered accordingly.

In the Terry case, the plaintiff brought an action as a taxpayer for an injunction under section 526a, Code of Civil Procedure, to enjoin the payment to Bender of a warrant in the sum of $15,095.74. Some of the findings of fact paralleled findings in the Schaefer case with respect to sales of city property and subsequent transfers, the Bender-Bussing loan, and related subjects. Accordingly, only a portion of the findings of fact in the Terry case need be stated here. Parts of the findings of fact were: 1. Defendant Bussing was the mayor and a member of the city council of the city at all times between July 1, 1953, and December 31, 1956. 2. Defendant Chapman is the city treasurer and has been such officer at all times since July 1, 1953. 3. On January 4, 1955, the city council approved a warrant of the city payable to Bender in the amount of $15,095.74, which was for costs advanced and for services rendered to the city by Bender under the contract of January 11, 1944, as reflected by statements furnished to the city by Bender and audited and approved by the city controller. 4. Chapman, as treasurer, refused to honor the warrant and it has never been paid; by resolution adopted by the city council on November 13, 1956, the motion approving the warrant was rescinded and the warrant was cancelled.

Based upon the findings of fact, the trial court reached the following conclusions of law: 1. The warrant having been cancelled and rescinded, there is no necessity for determining whether an injunction should be granted to prohibit the payment thereof. 2. Since Bussing is no longer mayor and a member of the city council, there is no necessity for determining the issue of whether Bussing should be enjoined from participating in any deliberations of the city council or voting on any matters in which Bender is involved. 3. The rights between Bender and the city under the contract of January 11, 1944, having been determined by the judgment in the

Schaefer case, there is no necessity for determining in this action whether Bender should be enjoined from receiving from the city any compensation or reimbursement under the contract. 4. The city and the citizens and the taxpayers thereof have been guilty of laches and are estopped from complaining of the dealings between Bender, Allen, Elbert, Ltd., and the city. 5. Neither the plaintiff nor the city, or any citizen thereof, is entitled to any relief against any of the defendants in the Terry action. 6. Each of the parties should bear his own costs. Judgment was entered accordingly.

In addition to the specific findings of fact as above set forth, in each case a general omnibus finding was made as follows: "All material allegations of the third amended complaint and the answers thereto which are in conflict with the facts herein found to be true are not true."

We must assume that the evidence is sufficient to support the specific findings of fact of the trial court because the plaintiff in each case has failed to show on his appeal that there is no substantial evidence to support any challenged finding. ■■■ As was said in *Routh* v. *Palm Oil Co.*, 160 Cal.App.2d 359, at pages 360-361 [324 P.2d 936]: "Where an appellant claims that some particular issue of fact is not sustained by the evidence, he is required to set forth in his brief all of the material evidence on the point and not merely his own evidence. If this is not done, the error assigned is deemed waived. (*Kruckow* v. *Lesser*, 111 Cal.App.2d 198, 200 [244 P.2d 19], and cases cited.)" The soundness of such requirement that a fair and adequate statement of the evidence be made is demonstrated in this matter in which the reporter's transcript is more than 2,400 pages in length. However, so that the matter may be thoroughly considered, we have examined with care the transcript of the testimony before the trial court. Reference to such record will be made in the course of this opinion.

■■■ In the Schaefer case, the appellant contends that the trial court failed to make findings of fact as to allegations of actual and constructive fraud. ■■■ It is true that the general omnibus finding, to which reference has been made, is not a finding on such issues. Such finding is insufficient for any purpose because it is uncertain; it cannot be determined what averments were deemed material by the trial court. (*Turner* v. *Turner*, 187 Cal. 632, 635 [203 P. 109]; *McKannay* v. *McKannay*, 68 Cal.App. 709, 714 [230 P. 218];

*Williams* v. *Wren*, 88 Cal.App. 607, 608 [263 P. 1038].)
█ The same is true with respect to the use of the words "which are in conflict with the facts herein found to be true" because there is an uncertainty as to what allegations the trial court regarded as being "in conflict" with its specific findings. (*Krug* v. *F. A. Lux Brewing Co.*, 129 Cal. 322, 323-324 [61 P. 1125]; see 2 Witkin, California Procedure, § 115, p. 1847.) █ However, such an improper and ineffective finding is of no moment if there are specific findings which sufficiently cover the issue as to which the question is raised. (*Turner* v. *Turner, supra*, 187 Cal. 632, 635 [203 P. 109].) Accordingly, attention will be given to specific findings.

█ In the Schaefer case, the appellant states that the trial court found that the defendants did not conspire to defraud "but did not pass on the question whether the defendants committed fraud either jointly or individually." He states that "[b]oth actual and constructive fraud pleaded in great detail in the complaint" and that "[t]he trial court failed to pass on the truthfulness of those allegations," in that it found as set forth in the general omnibus finding to which reference has been made above. ██ The light in which the findings must be examined is stated in *Chamberlain* v. *Abeles*, 88 Cal.App.2d 291, at pages 299-300 [198 P.2d 927] : "The principles governing the duty on the part of the court with respect to the necessity of making findings, is succinctly stated in *Petersen* v. *Murphy*, 59 Cal.App.2d 528, 532 [139 P.2d 49], as follows: 'It is well established that unless waived full findings are required on all material issues raised by the pleadings and evidence in a case (24 Cal.Jur. 935-936); that where a court renders a judgment without making findings upon all material issues of fact, the decision is against law, and constitutes ground for granting a new trial *provided* it appears that there was evidence introduced as to such issue and the evidence was sufficient to sustain a finding in favor of the complaining party if the omitted findings might have the effect of countervailing or destroying the effect of the other findings (24 Cal.Jur. 940-941; *Powell* v. *Johnson*, 50 Cal.App.2d 680, 683 [123 P.2d 875]; *Wilcox* v. *West*, 45 Cal.App.2d 267 [114 P.2d 39]).

█ " 'But it is equally well established that the findings of a court are to receive such a construction as will uphold rather than defeat its judgment thereon (*Breeze* v. *Brooks*, 97 Cal. 72, 77 [31 P. 742, 22 L.R.A. 256]), and are

to be read and considered together and liberally construed in support of the judgment (*Menghetti* v. *Dillon,* 10 Cal.2d 470, 472 [75 P.2d 596]; *Cornell* v. *Hollywood Turf Club,* 32 Cal. App.2d 204, 208 [89 P.2d 449]); and that if findings are made upon issues which determine a cause, other issues become immaterial and a failure to find thereon does not constitute prejudicial error (24 Cal.Jur. 947; *Merrill* v. *Gordon & Harrison,* 208 Cal. 1, 6 [279 P. 996]).' It is likewise the rule that where a finding, if made, would necessarily have been against the appellant, he cannot complain of the lack of such finding. (*Petersen* v. *Murphy,* 59 Cal.App.2d 528, 535 [139 P.2d 49]; *Moore* v. *Hoar,* 27 Cal.App.2d 269 [81 P.2d 226]; *Consolidated Irrigation District* v. *Crawshaw,* 130 Cal. App. 455, 462 [20 P.2d 119]; *Brooks* v. *Bailey,* 40 Cal.App.2d 310, 316 [104 P.2d 854]; 24 Cal.Jur. 944.)''

 Reserving for later consideration the question of the validity, irrespective of actual fraud, of the various transactions which are challenged because of Bender's relationship with the city, we turn to the narrower problem of the existence of actual fraud. The specific findings of fact as to the Alzola transactions were that the city council knew that Bender was the actual purchaser, received legal advice with respect thereto,[2] and consented to such purchases. With respect to the Allen purchases, a similar finding was made. The specific finding as to legal advice was: ''That prior to the purchase of any property by Bender or Allen from the city, the City Council of the city had obtained legal advice that the city Charter did not, nor did any provision of law, prohibit any official or employee of the city from purchasing any property from the city. The city, its officials and employees, relied upon such advice, and, both prior and subsequent to the transactions herein mentioned, sales of city property were made by the city to officials and employees of the city.'' At this point we are not concerned with the correctness of such advice but rather with the fact that it was given, insofar as it bears upon the honesty and good faith of Bender and Allen with respect to the issue of actual fraud. (*Warfield* v. *Clark,*

---

[2]The transcript of the testimony shows that the advice involved was that of the city attorney, Ralph K. Pierson, prior to the effective date of the 1948 charter. For instance, the witness Warren W. Butler testified that in a city council meeting, ''The City Attorney, I believe, as I remember, said that in his opinion that it was perfectly all right for a city employee to buy property.'' Ralph K. Pierson testified that, as city attorney, he so ruled with respect to the 1925 charter and that various officials, who were not members of the city council, made such purchases.

118 Iowa 69 [91 N.W. 833, 836] ; *cf. People* v. *Ferguson,* 134 Cal.App. 41, 52 [24 P.2d 965] ; *People* v. *Wyatt,* 101 Cal.App. 396, 398 [281 P. 629].) Regardless of whether a particular contract was otherwise invalid—a matter to be hereafter discussed—insofar as actual fraud is concerned the important factor is that the members of the council were informed of the true facts with respect to such transaction and acted in good faith upon the advice of the city attorney at the time the council voted with respect to such sale, irrespective of whether such knowledge and advice were set forth in the minutes which recorded the action taken as to the sale. (See *West* v. *City of Oakland,* 30 Cal.App. 556, 562 [159 P. 202].) Furthermore, the court found that none of the defendants Bender, Adams and Allen at any time or in any manner concealed from the city or from any person their ownership or method of acquisition of the real property in question, but that the ''ownership and method of acquisition have been known to the city, its council and officials at all times since its inception.''

As to the purchases by Elbert, Ltd., the court found that in several instances persons and corporations, including Elbert, Ltd., who had employed Bender as an attorney, made purchases of real property from the city. But the crucial finding was that it was not true that Bender represented such persons or corporations in any negotiations or transactions with the city. Moreover, the court found that the city council knew that Bender represented such persons or corporations as an attorney in other matters. With particular reference to the purchases by Elbert, Ltd., the court found that the ''City Council received legal advice and consented to such purchases.'' Furthermore, it was found that each Elbert, Ltd., purchase was ''without any advance understanding or agreement with defendants, or any of them, to later re-sell the same to defendants, or any of them'' and that no Elbert, Ltd., purchase was made on behalf of any other defendant. A further finding was that there were no facts with respect to such purchases which were concealed from, or unknown to, the city at the time thereof.

As to all sales, the court found that every bid which was accepted by the city council was the highest bid received for the particular property being sold.

Such specific findings of fact show that there could be no finding of actual fraud and that the determination of the trial court with respect to that issue was contrary to the

position of the appellant. The appellant, accordingly, cannot prevail in his challenge of the findings since if further or · more specific findings relating to that issue had been adopted, they would necessarily have been adverse to him.

As stated in *Berry* v. *Crowell*, 55 Cal.App. 534, at page 537 [203 P. 835] : ''If sufficient can be gathered from the whole of the findings of the court that material issues are fairly determined, the finding will support the judgment.

'It was not necessary that the facts as found should be in any particular form or follow the pleadings. If the truth or falsity of each material allegation in issue can be demonstrated from the findings, the law is complied with.' (*Ready* v. *McDonald*, 128 Cal. 663 [79 Am.St.Rep. 76, 61 P. 272] ; *Millard* v. *Legion of Honor*, 81 Cal. 340 [22 P. 864].) So, also, where findings are seemingly contradictory. (*American Nat. Bank* v. *Donnellan*, 170 Cal. 15 [Ann.Cas. 1917C 744, 148 P. 188].)'' (See also *J. J. Howell & Associates, Inc.* v. *Antonini*, 124 Cal.App.2d 388, 392 [268 P.2d 557] ; *Saracco Tank & Welding Co.* v. *Platz*, 65 Cal.App.2d 306, 320 [150 P.2d 918] ; *Bailey* v. *Leeper*, 142 Cal.App.2d 460, 465 [298 P.2d 648].)

Other attacks are made upon the findings of fact on the ground that some findings are uncertain or are in the nature of negative pregnants. An examination of the instances cited leads to the conclusion that they fall within the category aptly described by Mr. Presiding Justice Moore in *Heifetz* v. *Bell*, 101 Cal.App.2d 275, at pages 277-278 [225 P.2d 231] : ''The doctrine still obtains that findings are to be accorded a liberal construction with a view of supporting rather than defeating a judgment, and where it is plain that the intent was to find the material facts against appellant, the trial court's decision will not be set aside. (*Johndrow* v. *Thomas*, 31 Cal.2d 202, 208 [187 P.2d 681] ; *McAuliffe* v. *McAuliffe*, 53 Cal.App. 352, 355 [199 P. 1071] ; *Ballagh* v. *Williams*, 50 Cal.App.2d 10, 14 [122 P.2d 343].) It is clear from the findings as a whole and a review of the entire record that it was intended to find adversely on each of appellants' allegations relative to any material fraudulent representations. If there be error present, it is not such as to have prejudiced appellants or resulted in a miscarriage of justice. Section 4½, article VI of the Constitution was enacted for the purpose of preventing reversals in just such situations as are presented here. Where the record indicates that a fair

trial was had and the decision reasonably indicates the true findings and conclusions of the court and that the issues have been clearly cast and fairly determined, the judgment will not be upset." (See also *Richards* v. *Oliver*, 162 Cal.App.2d 548, 567 [328 P.2d 554].)

From a review of the evidence, it is clear that the findings of fact to which reference has just been made are supported by substantial evidence. This court is without power to substitute its deductions for those of the trial court. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].)

In addition, the trial court found that any cause of action of the plaintiff in the Schaefer case, except that for declaratory relief, was barred by the statute of limitations, including the portion thereof embodied in section 338, subdivision 4, of the Code of Civil Procedure.[3] Of course, any charge of fraud revolves around the relationship between Bender and the city and his acts or omissions with respect to such relationship. This action was filed on April 29, 1953. The various sales attacked herein occurred more than three years prior thereto. The payments for services and costs with respect to the Bender and Allen purchases were made more than three years prior thereto. This appears to be true after allowance is made for absences of Bender from the state.[4]

As stated upon the prior appeal in the Schaefer case (140 Cal.App.2d 278, at pp. 294-295) : "The fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar recovery. [Citations.] The statute commences to run only after one has notice of circumstances sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. . . .

Where there is a duty to investigate, the plaintiff may be charged with knowledge of the facts which would have been disclosed by an investigation; but where there is no prior duty to investigate, the statute does not run until he has notice or knowledge of facts sufficient to put a reasonable man

---

[3]That subsection is as follows:

"Within three years: . . .

"4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

[4]In 1953, prior to the filing of the Schaefer action on April 29, 1953, Bender was absent from this state for about seven weeks. Also, he was away from California "[t]he last two or three weeks of 1949, and about the first month of 1950."

on inquiry.'' ■■■■ As noted in that opinion, at page 287, the plaintiff Schaefer alleged that he first became informed of the conspiracy charged by reading newspaper accounts of the statements of an attorney, James G. Butler, to the city council on and after April 14, 1953. Aside from the evidence of matters known to city officials, there was evidence that a newspaper in the community, the Compton Herald American, carried a news story on January 15, 1950, which related to property acquired by Bender from the city. That news item contained the statement that ''John F. Bender, well-known as Special Counsel for the City of Compton tax deed matters filed an application with the City Planning Commission last week to locate an open air skating rink on the south side of Mealy Street between Alameda Street and Cameron Street.'' Other news reports as to the matter and the opposition thereto appeared in other issues of the paper in January and February, 1950. The determination of whether the plaintiff had sufficiently explained why no action based on a claim of fraud had been brought by or on behalf of the city within the three-year period prescribed by the statute was for the trier of fact.

■■■■ As stated in *Tognazzini* v. *Tognazzini*, 125 Cal.App.2d 679, at page 687 [271 P.2d 77] : ''When the facts are susceptible to opposing inferences, whether a party had notice of circumstances sufficient to put a prudent man on inquiry as to a particular fact, and whether by prosecuting such inquiry he might have learned such fact, are questions of fact to be determined by the trial court. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 440 [159 P.2d 958] ; *Bowman* v. *McPheeters*, 77 Cal.App.2d 795, 798, 802-803 [176 P.2d 745] ; *Blackman* v. *Howes*, 82 Cal.App.2d 275, 278-279 [185 P.2d 1019, 174 A.L.R. 1004].)'' (See also *Bell* v. *Bayly Bros.*, 53 Cal.App.2d 149, 157 [127 P.2d 662].)

■■■■ We turn now to the validity of the various transactions even though actual fraud did not exist with respect thereto. In considering that problem, we are, of course, bound by the doctrine of the law of the case. ■■■■ That doctrine, as stated in *Nathanson* v. *Murphy,* 147 Cal.App.2d 462, at page 465 [305 P.2d 710], is ''that where on appeal the court, 'in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal.' '' ■■■■ Upon the trial, the evidence

established that, as alleged, Bender was employed upon a part-time basis by the city of Compton as a special city attorney for the purpose of rehabilitating tax-deeded and delinquent special-assessment properties situated within the city. With respect to that status as it bore upon his right to purchase property from the city, in the prior Schaefer opinion, after a plenary discussion of the authorities, it was determined as follows (140 Cal.App.2d 278, at p. 291): "He was an officer and agent of the city and as such was in a position to advise the city council as to what action should be taken relative to the property involved. He could not buy the property in his own name and he could not do so through a dummy. The contracts to purchase from the city and the ultimate sales were contrary to public policy and are void." The identical principle applies to the Allen transactions since she was associated with Bender as an attorney and assisted him in the performance of his duties for the city as such special city attorney. As further stated in the first Schaefer opinion, it is not necessary to show actual fraud, dishonesty, or loss to invalidate such a transaction. (140 Cal. App.2d 278, at p. 290.)

We turn now to a consideration of the Elbert, Ltd., transactions. The court found, based on substantial evidence, that Bender did not represent Elbert, Ltd., in such transactions with the city and that he disclosed to the city council that Elbert, Ltd., was his client in other matters. In that respect the court found that "the city, its council and officials had knowledge that Elbert had employed Bender to perform legal services *in matters connected in part with purchases of properties from the City of Compton.*" (Emphasis added.) That finding is to be construed so as to support rather than to defeat the judgment. (*Johndrow* v. *Thomas,* 31 Cal.2d 202, 207 [187 P.2d 681].) It appears that such finding was based on evidence that Bender's services after such sales consisted of taking steps to perfect title in the purchaser, an undertaking consistent with the city's purpose of returning property to its normal status with reference to the payment of taxes and the use of the property. The contracts of sale were made on behalf of the city by the city council rather than by Bender and the findings of fact negative the existence of any improper influence by Bender upon the council. Accordingly, cases such as *People* v. *Sullivan,* 113 Cal.App.2d 510 [248 P.2d 520], where a city officer used her position to influence the council for her own private gain, and *Miller* v. *City of Mar-*

*tinez*, 28 Cal.App.2d 364 [82 P.2d 519], and *Moody* v. *Shuf-fleton*, 203 Cal. 100 [262 P. 1095], where the personal interest was that of the officer making the contract or approving claims thereunder, are not determinative of the present case.[5] It was the function of the trial court to consider and weigh the evidence and determine whether, under the circumstances, a prohibited interest existed.[6] We cannot say that the determination of the trial court that Bender did not have a prohibited interest was erroneous as a matter of law. (*Cf. City of Oakland* v. *California Const. Co.*, 15 Cal.2d 573, 577 [104 P.2d 30].) Accordingly, the Elbert, Ltd., contracts do not fall within the category of those heretofore discussed in which Bender and Allen had a personal interest.

The trial court, as set forth above, determined that each cause of action of the plaintiff, except that for declaratory relief, was barred by the statute of limitations. Reference was made to a number of sections of the Code of Civil Procedure. The discussion hereinabove with respect to section 338, subdivision 4, need not be repeated at this point. The statute of limitations as embodied in that section of the Code of Civil Procedure also applies to an action brought on the theory of a constructive trust. Part of the relief sought under the third amended and supplemental complaint was "that all of the defendants be declared trustees of the properties received by them in their transactions with the City of Compton since January 11, 1944, or the proceeds thereof," and that they be "required to reconvey such assets as they may hold as trustees of said City." As stated in *Bainbridge* v. *Stoner*, 16 Cal.2d 423, at pages 428-429 [106 P.2d 423]: "The theory of a constructive trust was adopted by equity as a remedy to compel one to restore property to which he is not justly entitled, to another. The person holding the property may have acquired it through fraud, undue influence, breach of trust, or in any other improper

---

[5] *Cf.* Government Code, section 1091, as amended in 1959, as to the definition of "remote interest" of a public officer. Such amendment is, of course, not applicable to the cases now before this court.

[6] With respect to the position of Bender who represented Elbert, Ltd., in matters other than the transactions with the city, the following language found in *People* v. *Darby*, 114 Cal.App.2d 412, at page 432 [250 P.2d 743], is worthy of note: "Precedent is of little value except as an analogue. Whether an officer or board member was interested at the time he or his board made the contract is a question for determination in each controversy." (*Cf. Escondido Lumber, Hay & Grain Co.* v. *Baldwin*, 2 Cal.App. 606 [84 P. 284].)

manner and he is usually personally liable in damages for his acts. But the one whose property has been taken from him is not relegated to a personal claim against the wrongdoer which might have to be shared with other creditors; he is given the right to a restoration of the property itself. The title holder is, therefore, said to be a constructive trustee holding title to the property for the benefit of the rightful owner, but he is not charged with responsibility based upon either the actual or presumed intention of the parties. (Civ. Code, § 2224; *Burns* v. *Ross,* 190 Cal. 269 [212 P. 17]; Rest., Restitution, § 160.) . . . No repudiation of a constructive trust is necessary to set the statute of limitations in motion. A cause of action in favor of the corporation and its stockholders arose when Stoner acquired the property of the corporation (*Leviston* v. *Tonningsen,* 212 Cal. 656 [299 P. 724]; *Lezinsky* v. *Mason Malt W. D. Co.,* 185 Cal. 240 [196 P. 884]) and the statute commenced to run against the appellants at least as soon as they knew, or should have known, what he had done." With respect to the applicable period of limitations, the court said at page 430: "Under ordinary circumstances, a plaintiff may not invoke the aid of a court of equity for relief against fraud after the expiration of the period of limitation for such an action unless he affirmatively pleads that he did not discover the facts constituting the fraud until within three years prior to the date he filed his complaint. (Code Civ. Proc., § 338.)" (See also *Earhart* v. *Churchill Co.,* 169 Cal. 728 [147 P. 942]; *Neet* v. *Holmes,* 25 Cal.2d 447, 466-467 [154 P.2d 854].)

 The fact that the contracts under which Bender, Allen and Adams derived their respective interests and took possession of the various properties were illegal did not prevent the statute of limitations from running against an action to quiet title or to recover possession. Section 318 of the Code of Civil Procedure[7] barred any such action under the evidence and the findings of fact in this case. (*Fickeisen* v. *Peebler,* 98 Cal.App.2d 320, 324 [219 P.2d 864].)

 Insofar as an accounting was sought with respect to any of the original transactions, such relief would be barred by the four-year limitation contained in section 343 of the

[7]Section 318 of the Code of Civil Procedure is as follows: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the property in question, within five years before the commencement of the action."

Code of Civil Procedure. (*People* v. *Taliaferro,* 149 Cal.App. 2d 822, 825 [309 P.2d 48].)

Under the seventh cause of action in the Schaefer case, the plaintiff sought recovery on behalf of the city of monies paid to Bender for services and costs relating to the sales in which he was the actual purchaser. Neither the 1925 charter nor the 1948 charter contains an express provision for the recovery of such payments such as was the case in *County of Marin* v. *Messner,* 44 Cal.App.2d 577 [112 P.2d 731], wherein the applicable section of the Political Code prescribed the duty of the district attorney to institute suit to recover the money of the county which was improperly disbursed. In that case, it was said at page 591: "With respect to the disputed question as to which of the three statutes of limitations must govern, it will suffice to say that the action is not one, as contended by defendant, upon an implied contract for money had and received, wherein the two-year statute is controlling; nor is it one, as contended by the county, to recover money from an involuntary trustee, wherein the four-year statute applies. As heretofore stated, it is an action based upon a liability created by statute, to wit, section 4005b of the Political Code; and therefore, as held by the trial court, the three-year statute (Code Civ. Proc., § 338, subd. 1), is controlling." In the present case, the appellant Schaefer has not directed attention to any payment to Bender in connection with the Allen or Bender sales which was made within four years of the institution of the action. Clearly, if the two-year limitation relating to money had and received does not apply (Code Civ. Proc., § 339, subd. 1), the four-year limitation would appear to constitute the longest period of time which could be urged by the appellant. The following language in *City of Petaluma* v. *Hickey,* 90 Cal.App. 616, at page 621 [266 P. 613], is pertinent with respect to the recovery of money illegally paid: "As we have shown above, the liability of the defendant, if any, was that of an involuntary trustee, but it has been frequently adjudged that an action against an involuntary trustee must be commenced within four years and that the statute applicable is section 343 of the Code of Civil Procedure. (*Nougues* v. *Newlands,* 118 Cal. 102, 106 [50 P. 386]; *Broder* v. *Conklin,* 121 Cal. 282, 288 [53 P. 699].) The statute of limitations had run." (See also *Moss* v. *Moss,* 20 Cal.2d 640, 645 [128 P.2d 526, 141 A.L.R. 1422].)

We have, accordingly, come to the conclusion that the

record sustains the determination of the trial court with respect to the defenses based upon the statute of limitations.

A claim of error is founded upon the refusal of the trial court to permit the appellant to introduce evidence tending to prove that Bender purchased properties through dummies in other cities, one or more of which were represented by him. Such rulings were not prejudicial in the light of the evidence and the findings of fact that Bender made known to the Compton city council that he was purchasing in the name of Alzola and in view of the determination of the trial court upon the matter of the statute of limitations. (*Cf. Calistoga Vineyard Co., Ltd.* v. *Luchetti*, 129 Cal.App. 374, 380 [18 P.2d 729].) Other claims of error with respect to the admissibility of evidence have been examined. No prejudice to the appellant is discernible.

The appellant Schaefer asserts that the trial court should not have made an affirmative award in favor of Bender. He states: ''The peculiarity of the procedure followed by the trial court was that by not insisting on any pleadings on the part of Bender for his affirmative recovery, there was no opportunity to assert a defense in the Schaefer suit to Bender's claim.'' Such contention is without merit. As is hereafter discussed, the Schaefer action was equitable in nature. Equity has power to do complete justice. A court of equity will make a final disposition of the litigation governed by the circumstances as shown to exist at the time judgment is rendered rather than at the inception of the litigation. A supplemental pleading is not necessary to that end. (*Kazanteno* v. *California-Western States Life Ins. Co.*, 137 Cal.App.2d 361, 376 [290 P.2d 332].) Under the eighth cause of action, the appellant sought a declaration as to the validity of the sales in question and the ''present validity'' of Bender's contract with the city. In his prayer, he asked for ''judgment declaring the rights of the parties under the contract,'' under certain resolutions and under the contracts of sale approved by such resolutions. The city was a party and appeared in the action. Pursuant to that cause of action, the court had jurisdiction of the entire matter and was not restricted to a declaration that Bender was entitled to a particular amount under the contract but could render judgment in his favor for that amount. (*California Bank* v. *Diamond*, 144 Cal.App.2d 387, 390 [301 P.2d 60].)

In the Terry appeal, the appellant contends that he should have a judgment to the effect that Bender was

not entitled to any compensation from the city. But it is clear that in denying any compensation to Bender from and after the Bussing-Bender transaction, the trial court followed the law as stated on the prior appeal. In *Terry* v. *Bender, supra,* 143 Cal.App.2d 198, the court stated at pages 213-214: "Dependent on the character of the misconduct involved and the severability of the service rendered, an agent's fraud against his principal or some other serious breach of fealty on his part will defeat the agent's right to compensation either in whole or to an extent equivalent to the injury caused the principal by his offensive conduct. (3 C.J.S., Agency, § 182.) . . . We need not pass on whether the misconduct ascribed to Bender under the pleadings would disentitle him to any compensation; suffice it to say that because of the alleged fraud he would not be entitled to the full compensation embodied in the warrant." We have already discussed the effect of the statute of limitations with respect to the recovery of moneys paid to Bender for services rendered in connection with the Allen and Bender sales. Aside from that matter, the trial court disallowed compensation to Bender for all services rendered which were covered with the taint of fraud arising from the Bussing matter. (See *Clark* v. *Millsap,* 197 Cal. 765, 785 [242 P. 918].) But Bender could still properly be compensated for prior services which were unaffected by such fraud and for which he had not been paid since there was no difficulty of apportionment as to the various items of service under the contract. (See *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1, 4 [20 N.E.2d 482, 486]; *Blum* v. *Palace Garage Co.,* 214 Wis. 319, 323 [252 N.W. 177, 178]; 2 Rest., Agency, Second, § 469; 3 C.J.S. Agency § 182.) Since the sound basis for refusing compensation is not that a penalty should be imposed but rather that payment is not due for services not properly performed (see *Lydia E. Pinkham Medicine Co.* v. *Gove, supra*), no penalty could be imposed to prevent payment to Bender for costs actually expended or incurred by him at any time for the benefit of the city.

 In both cases, it is contended that Bender failed to disclose publicly the existence of section 2911 of the Civil Code, as amended in 1945, "when it directly affected the sales by the City."[8] Insofar as such contention relates to the sales

[8]The pertinent portion of section 2911 of the Civil Code, as amended, is as follows: "Anything to the contrary notwithstanding, any lien here-

to Elbert, Ltd., in the period of 1944 to 1948, it appears to be without merit in the light of the findings of fact above set forth and in view of the uncertainty of the effect of the 1945 amendment to section 2911 of the Civil Code prior to adjudication thereon by the courts. On December 29, 1948, the opinion in *Rombotis* v. *Fink*, 89 Cal.App.2d 378 [201 P.2d 588], was filed. The appeal therein was by the plaintiff from a judgment of the superior court refusing to quiet his title to real property against the lien of a street improvement bond held by the defendant and decreeing foreclosure of such bond on the defendant's cross-complaint. In reversing the judgment of the trial court, the appellate court stated, at page 394: "It must therefore be held (1) that section 330 of the Code of Civil Procedure and section 2911 of the Civil Code, as enacted and amended respectively in 1945, are constitutionally applicable to assessment bonds and liens in existence prior to the effective date of the legislation, and (2) that the limitations contained in said sections or in any other applicable sections are not tolled during the time title is in the state under a tax deed." A hearing was denied by the Supreme Court on February 24, 1949. Further problems relating to the effect of section 2911 were before the Supreme Court in an action for partition, *Scheas* v. *Robertson*, 38 Cal.2d 119 [238 P.2d 982], in which the opinion was filed on December 11, 1951. Therein the court stated (p. 127) that "where the 1945 legislation applies, it will operate to prevent the bondholder from enforcing his lien in any manner, whether the remedy pursued be an action for partition or foreclosure." With respect to the meaning of the phrase "bona fide purchaser," the court stated, at pages 129-130: "Plaintiff does not claim that defendants had actual knowledge that the obligation evidenced by plaintiff's bond and the lien securing such bond had not been extinguished. Such obligation and lien could have been extinguished by payment or merger. (10 Cal.Jur., § 10,

---

tofore existing or which may hereafter exist upon real property to secure the payment of a public improvement assessment shall be presumed to have been extinguished at the expiration of four years after the due date of such assessment or the last installment thereof, or four years after the date the lien attaches, or on January 1, 1947, whichever is later, or in the event bonds were or shall be issued to represent such assessment, the lien shall then be presumed to have been extinguished at the expiration of four years after the due date of said bonds or of the last installment thereof or of the last principal coupon attached thereto, or on January 1, 1947, whichever is later. The presumptions mentioned in this paragraph shall be conclusive in favor of a bona fide purchaser for value of said property after such dates."

p. 606.) The need for the remedial legislation in question has been discussed above, and it would appear that one of the problems toward which the 1945 amendment of section 2911 was directed was the inability of a prospective purchaser of property to ascertain the present existence of the bond and the identity of its holder, and the abandonment or extinguishment in fact of the bond. It follows, therefore, that although one may have notice that the improvement bond is undischarged of record, he is nevertheless within the meaning of the phrase 'bona fide purchaser,' as contemplated by the 1945 amendment to section 2911, where he has no actual, as distinguished from constructive, knowledge that the assessment lien is not in fact extinguished. Here the evidence, together with the presumption created by the 1945 amendment, sustain the finding that defendants were 'bona fide purchasers for value.' Plaintiff's bond lien is conclusively presumed to have been extinguished, and the parity principle has no application.'' On December 11, 1951, the opinion in *Sipe* v. *Correa*, 38 Cal.2d 131 [238 P.2d 989], was also filed. There the property became delinquent for county taxes in the fiscal year 1930-1931. It was sold to the state in 1931 and was deeded to the state in 1936. The bonds matured in 1938 and 1941, respectively, while title was in the state. The defendants Correa purchased the property at a tax sale, the tax deed being dated March 17, 1947. It was not until June, 1947, about the time the action was commenced, that the defendants Correa first learned of the existence of the plaintiff's bonds. Judgment for the defendants Correa, quieting their title against the plaintiff, was affirmed. The court held that "the fact that plaintiff could not pursue the remedy of partition as against the state during the years it held title to the property will not sustain a constitutional objection of lack of due process.'' Furthermore, in denying the soundness of the constitutional attack upon the 1945 legislation as it was applied to the plaintiff's bonds, the court pointed out the manner in which the rights of the bondholder could have been protected either by a sale of the property pursuant to a demand therefor upon the county treasurer or pursuant to the remedy of foreclosure through judicial action during the period the state held title to the property and prior to the time section 2911 of the Civil Code was applicable in favor of a bona fide purchaser for value at a tax sale. On March 11. 1953. the opinion of the appellate court was filed in a

series of cases to which reference may be made under the name of the first thereof, *Harless* v. *Winter,* 116 Cal.App.2d 641 [254 P.2d 168]. Each was an action in partition, under section 752 of the Code of Civil Procedure, and was brought by the plaintiff therein as owner of unforeclosed street improvement bonds issued by the treasurer of the city of San Diego pursuant to the Improvement Act of 1911. Each action was filed in 1949. More than four years had expired after the due date of each bond, or the last installment due thereon, or of the last principal coupon attached thereto prior to January 1, 1947. The defendants in the various cases were owners of tax deeds, all acquired from the State of California pursuant to chapter 7, part 6, division 1 of the Revenue and Taxation Code and each of the deeds had been issued prior to January 1, 1947. In appealing from an adverse judgment, the plaintiff in each case contended that under the facts thereof the provisions of section 2911 of the Civil Code did not result in a complete extinguishment of plaintiff's bonds on January 1, 1947, and that the presumption set forth therein was disputable, not conclusive, and had been overcome by the evidence produced at the trial. The judgment of the trial court in each case was affirmed and on May 7, 1953, the Supreme Court denied a hearing. The fact that Bender and Allen represented each plaintiff bondholder in the series of cases and that their position may have had little merit in the light of the Rombotis, Scheas and Sipe cases, *supra,* and other cases theretofore decided, does not obliterate the fact that as late as the early part of 1953 bondholders were still attempting by litigation to limit the effect of section 2911 of the Civil Code. (See also *Kipp* v. *Luberco, Ltd.,* 116 Cal.App.2d 656 [254 P.2d 150].)

On the record before us the appellant in each case has failed in his effort to establish fraud or misconduct with respect to Bender's advice, or lack thereof, on the subject of the effect of the 1945 amendment to section 2911 of the Civil Code.

Appellant in each case argues that he should have been allowed costs in the trial court. Aside from the fact that the cause of action for declaratory relief in the Schaefer case was equitable in nature (*Adams* v. *Cook,* 15 Cal.2d 352, 362 [101 P.2d 484]), an action by a taxpayer who alleges a fraudulent or illegal alienation of public property, or a fraudulent or illegal application of public funds, is one in equity since he has no remedy at law. (64 C.J.S. Municipal Corporations § 2157; 52 Am.Jur., Taxpayers' Actions, § 28.)

In the Terry case, relief was sought pursuant to the provisions of section 526a of the Code of Civil Procedure which relates to injunctive relief. (*Terry* v. *Bender, supra,* 143 Cal.App.2d 198.) The allowance of costs in each case was, accordingly, a matter for the determination of the trial court in the exercise of its discretion. (See *Owen* v. *Cohen,* 19 Cal.2d 147, 155 [119 P.2d 713] ; *Neider* v. *Dardi,* 152 Cal.App. 2d 156, 165 [313 P.2d 72].) There was no abuse of such discretion in either the Schaefer or the Terry case in the requirement that each party bear his own costs.

 In each case, complaint is also made of the refusal of the trial court to permit an amendment to the complaint for the purpose of seeking recovery of counsel fees. There was no error. ''In the absence of statutory authority and where no fund has been created or preserved, a taxpayer is not entitled to the allowance of counsel fees.'' (Note, 5 A.L.R. 2d 874, 877; see *Williamson* v. *Los Angeles County Flood Control Dist.,* 42 Cal.App.2d 622, 628 [109 P.2d 992].) While the actions have resulted in a saving to the city and, to that extent, a public service has been rendered, the city treasury was in no sense in the custody or control of the trial court and that court could not order any amount paid therefrom as counsel fees in either case. The same reasoning applies to the claims of each appellant with respect to reimbursement for expenses of investigation and litigation.

The essential issues in the controversy upon which both cases were based were properly determined in the Schaefer case. Under such circumstances, no error appears as to the disposition made in the Terry case.

The city has paid the judgment for money in the Schaefer case. But in view of the determination made herein it is not necessary to pass upon the effect, with respect to this appeal, of such action of the city. (*Cf. Oakman* v. *City of Eveleth,* 163 Minn. 100 [203 N.W. 514].)

In each case, the appeals other than from the judgment are dismissed and the judgment is affirmed. Each party will bear his own costs on appeal.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied May 18, 1960, and appellants' petition for a hearing by the Supreme Court was denied June 14, 1960.