95 Cal.Rptr.2d 744 (2000)
80 Cal.App.4th 578
GROSSMONT HEALTHCARE DISTRICT, Plaintiff and Appellant,
v.
SAN DIEGO HOSPITAL ASSOCIATION et al., Defendants and Respondents.
D031994, D033461.
Court of Appeal, Fourth District, Division One.
March 30, 2000.
As Modified on Denial of Rehearing April 28, 2000.
Review Granted June 28, 2000.
*746 Steefel, Levitt & Weiss, Stephen S. Mayne, Michael J. Lawson, San Francisco; Law Offices of Jeffrey G. Scott and Jeffrey G. Scott, San Diego, for Plaintiff and Appellant.
Seltzer, Caplan, Wilkins & McMahon, Seltzer, Caplan, McMahon, Vitek, Gerald L. McMahon, J. Scott Scheper; Barnhorst, Schreiner & Goonan, Stephen L. Schreiner and Teresa L. Kubu, San Diego, for Defendants and Respondents.
*745 NARES, J.
This is an action by Grossmont Healthcare District (the District) to recover possession of a publicly owned hospital and related assets that the District leased and transferred in 1991 to two private nonprofit corporations, defendants and respondents San Diego Hospital Association (SDHA) and Grossmont Hospital Corporation (GHC), under three written agreements made under the provisions of Health and Safety Code section 32000 et seq. (The Local Health Care District Law). The District's complaint alleges the agreements are void under Government Code[1] section 1092 because the District's chief executive officer, its general counsel, and all five members of its board of directors had personal financial interests in the agreements in violation of section 1090, one of California's conflict-of-interest statutes. GHC filed a motion for summary judgment, joined by SDHA, on the ground the District's action is time-barred. The District filed a cross-motion for an order summarily adjudicating there is no merit to the statute of limitations defense asserted by GHC and SDHA because it is barred under the "no limitations" rule in Hoadley v. San Francisco (1875) 50 Cal. 265, 1875 WL 1581 (Hoadley) and its progeny (the Hoadley rule), which (as we shall explain, post) provides that no lapse of time, whether asserted by a statute of limitations defense or a laches defense, will prevent the state or any of its subdivisions from reclaiming public trust property illegally transferred to or acquired by a private party.
In consolidated appeals,[2] the District appeals (in appeal No. D031994) from (1) the judgment entered in favor of SDHA and GHC after the court found this action was time-barred and granted the motion for summary judgment filed by GHC and joined by SDHA; (2) the denial of the District's cross-motion for summary adjudication; and (3) the subsequent denial of the District's motion to amend the complaint. The District also appeals (in appeal No. D033461) from (4) the portion of the amended judgment awarding $393,798 in attorney fees and other costs in favor of GHC, and $32,594 in attorney fees and other costs in favor of SDHA.
The principal issue presented is whether the Hoadley rule applies to an action by a public health care district to recover a leasehold interest in a public hospital that the district contractually conveyed to private entities, when the transaction was completed under color of lawful statutory authority (The Local Health Care District Law), but the legal defect that allegedly rendered the transaction void ab initio is an alleged violation of the conflict of interest prohibitions set forth in section 1090.

For reasons we shall discuss, we conclude in this case of first impression that the Hoadley rule applies and bars a limitations defense in such an action as a matter of sound public policy. Accordingly, we reverse the summary judgment and related orders challenged in these consolidated appeals.

FACTUAL BACKGROUND

A. Parties and Players

The District is a local health care district organized and operating under the provisions of The Local Health Care District Law and is a political subdivision of the State of California. The District is the owner of Grossmont Hospital (the hospital), a public 465-bed acute care hospital located in La Mesa, California.
*747 In May 1991, before the lease transaction that is the subject of this action, the members of the District's five-member board of directors (the District's board) were: George Hurst, Adrian Jameson, Curtis Kelly, Basil Maloney, and Robert Muscio. The District's chief executive officer was Michael Erne. The District's legal counsel was John Whitney.
GHC is a private nonprofit corporation formed to operate the hospital. GHC has been operating the hospital under the subject 30-year lease (discussed, post) since May 1991. SDHA, which is also a private nonprofit corporation, is the parent of a multi-hospital health care system in San Diego County.

B. The May 29, 1991, Contracts and Leasehold Interest

On May 29, 1991, the District formally entered into an affiliation with respondent SDHA and leased the hospital to GHC for a term of 30 years. On this date, the District, with the approval of four of its five directors and acting under the authorization of The Local Health Care District Law, entered into the three contracts (hereafter the contracts) that are the subjects of the instant action: (1) an affiliation agreement, which shifted the hospital into the network of private healthcare facilities managed and controlled by SDHA; (2) a lease agreement between the District and GHC, which vested possession of the hospital and its revenues in GHC for 30 years; and (3) a transfer agreement, which gave GHC title to the District's cash and hospital-related intangible assets.

1. Exhibit 7.5 to the Affiliation Agreement: GHC Directors and Officers

Under article 7 of the affiliation agreement, the respective obligations of the District and SDHA to implement that agreement were subject to several specified conditions, including (among others) the condition set forth in section 7.5 of article 7 that "SDHA shall have elected and the District shall have approved, the persons designated in Exhibit 7.5 attached hereto as directors of GHC, and such directors shall have elected the persons designated in Exhibit 7.5 as officers of GHC."
Exhibit 7.5 to the affiliation agreement, titled "[GHC] Board of Directors and Officers," designated 15 named members of the GHC board of directors (GHC's board), including (among others) Michael Erne (the District's then-chief executive officer) and all five members of the District's then-existing board of directors: George Hurst, Adrian Jameson, Curtis Kelly, Basil Maloney, and Robert Muscio. The list of GHC officers set forth in exhibit 7.5 designated Michael Erne as the chief executive officer and assistant secretary of GHC.

2. Exhibit 7.3.2 (GHC Bylaws) to the Affiliation Agreement: Compensation of GHC's Directors and Chief Executive Officer

Section 7.3.2 of the affiliation agreement provided that, "[effective as of the closing date ... [t]he bylaws of GHC shall have been duly adopted in substantially the form attached hereto as Exhibit 7.3.2."
Exhibit 7.3.2 to the affiliation agreement, titled "Bylaws of [GHC]," stated in part in article V ("Board of Directors"), section 5 ("Compensation of Directors"), that all members of GHC's board would be compensated a monthly fee of $500 until May 1, 1996. (Bolding and italics deleted.)
Exhibit 7.3.2 also stated in part in article VII ("Officers"), section 7 ("Chief Executive Officer"), that "[t]he salary and benefits of the Chief Executive Officer shall be established by the President from time to time, subject to the rights, if any, of the Chief Executive Officer under any contract of employment." (Bolding and italics deleted.)

C. The District's May 28, 1991, Board Resolution 11-91(B)

On May 28, 1991, at a regular meeting held the day before the contracts were executed, the District's board passed and *748 approved Resolution 11-91(B) (the resolution), which (among other things) (1) approved the District's proposed affiliation with SDHA (§ 1 of the resolution), the proposed lease of the hospital and related assets to GHC (§ 2), the proposed transfer of certain assets to GHC (§ 3), and the contracts (§ 4); (2) authorized Michael Erne and other named officers of the District to execute the contracts (§ 4); and (3) approved the list of GHC board members listed in exhibit 7.5 to the affiliation agreement (§ 5). District directors Hurst, Jameson, Kelly, and Muscio voted in favor of the resolution; director Maloney voted against it.

D. The District's May 28, 1991, Board Resolution 13-91

At this same May 28 meeting held the day before the contracts were executed, the District's board also approved Resolution 13-91, which is titled "First Amendment to Grossmont Healthcare District Deferred Compensation Plan." Resolution 13-91 provided (among other things) that, "immediately upon completion of the lease transaction, substantially all of the [District's employees] will become [employees of GHC] and [the District] will remain in existence, but will have no [e]mployees." All five of the District's directors (Hurst, Jameson, Kelly, Maloney, and Muscio) voted in favor of Resolution 13-91.

PROCEDURAL BACKGROUND

A. Verified Complaint and Responsive Pleadings

On July 18, 1997, more than six years after the subject contracts were executed, the District commenced the instant action. In its verified complaint, the District asserts causes of action for declaratory relief, preliminary injunctive relief, imposition of a constructive trust, and an accounting; and alleges the contracts are void under section 1092 because the District's chief executive officer (Erne), its general counsel (Whitney), and all five members of its board members (Hurst, Jameson, Kelly, Maloney, and Muscio) had personal financial interests in the agreements in violation of section 1090, one of California's conflict-of-interest statutes.
Specifically, the District alleges its former board members and chief financial officer were financially interested in the contracts in May 1991 when the contracts were executed, because (1) exhibit 7.5 to the affiliation agreement (discussed, ante) identified all five of the District's directors as directors of GHC, and identified its former chief executive officer as the chief executive officer and assistant secretary of GHC; and (2) exhibit 7.3.2 to the affiliation agreement (GHC's bylaws, discussed ante) stated that all of GHC's directors would be paid a monthly $500 fee and Erne, as GHC's chief executive officer, would receive a salary and benefits as compensation for his services. The District also alleges its attorney, Whitney, was financially interested in the contracts because he and the law firm in which he was a partner notified the District in writing after the execution of the contracts that they had been asked to provide legal services to GHC in connection with the operation of the hospital.
In their verified answers to the District's complaint, SDHA and GHC assert numerous affirmative defenses, including the defense that the complaint is "barred by the applicable statutes of limitations."[3]

B. Motion for Summary Judgment and Cross-Motion for Summary Adjudication (Appeal No. D031991?)
In January 1998, GHC filed a motion for summary judgment,[4] joined by SDHA, *749 contending the District's action should be deemed an action on a statute (§ 1090 et seq.) for a penalty or forfeiture within the meaning of Code of Civil Procedure section 340, subdivision (1), and the instant action is thus time-barred under the one-ear limitations period set forth in that statute.
The District filed a cross-motion for summary adjudication, seeking an order summarily adjudicating that there is no merit to the statute of limitations defense asserted by GHC and SDHA because the instant action seeks recovery of an interest in public trust property (the hospital and related assets), and thus no statute of limitations applies to this action under the Hoadley "no limitations" rule that originated with the California Supreme Court's decision in Hoadley v. San Francisco, supra, 50 Cal. 265.

Memorandum Decision
The court denied the District's summary adjudication motion and granted summary judgment in favor of SDHA and GHC based on the court's finding that the Hoadley rule does not apply in the instant action for five principal reasons set forth in its memorandum decision. First, the court reasoned that whether the Hoadley rule applies in a given case depends on the gravamen of the complaint, and, "[h]ere, the gravamen of the complaint is to void contracts based on an alleged conflict of interest under [ ] section 1090."[5]
Second, the court found that no case authority holds that the Hoadley rule supersedes Code of Civil Procedure Code of Civil Procedure section 345[6] and the other statutes of limitations set forth in chapter 3 (titled "[ ] Actions other than for Recovery of Real Property")[7] of the Code of Civil Procedure, and thus by operation of Code of Civil Procedure Code of Civil Procedure section 345 the limitations set forth in chapter 3 apply to the instant action.
Third, the court stated that courts in this State have held that actions by governmental entities under section 1090 or its predecessor statute are subject to chapter 3 statutes of limitations.[8]
Fourth, the court also reasoned that even if the Hoadley rule "trumps" Code of Civil Procedure section 345 so that no statute of limitations applies to actions to recover public trust property, the Hoadley rule applies to only two categories of cases "takeaway" cases[9] involving assertions *750 of a prescriptive right (i.e., actions to recover public trust property "usurped" by private parties) and "giveaway" cases[10] involving unconstitutional gifts of public trust propertyand the instant case falls into neither category.
Finally, the court reasoned that a distinction must be drawn between an inherently invalid transfer of public assets, and a transfer that is invalid because of the means by which it was accomplished, such as the alleged conflict of interest involved in the instant case. The court noted that, in "bold contrast" to the Hoadley line of cases, the instant case involves "the ultimate transfer of the District's hospital and associated assets by way of lease to a nonprofit corporation for operation of the hospital" under "an arrangement specifically contemplated and authorized by valid legislative act, Health and Safety Code [section] 32[0]00 et seq." Observing that the District did not contend this legislation (The Local Health Care District Law) is unconstitutional, "or that it authorizes an illegal transfer of public use property," the court found that, "the transaction sought to be voided involved a wholly permissible transfer of public use property so long as it was otherwise accomplished legally." (Italics added.)

C. Denial of the District's Motion to Amend (Appeal No. D0319U)

In April 1998, after the court granted summary judgment in favor of GHC and SDHA, the District filed a motion for reconsideration or, in the alternative, for leave to file an amended complaint. The
District sought leave to amend its pleadings by (among other things) (1) adding allegations that any applicable statute of limitations was tolled, and (2) adding two new causes of action (one alleging the contracts violated the authorizations and limits of certain provisions of the Health and Safety Code; and the other alleging the contracts, as drafted and implemented, were void because they constituted an unlawful delegation of legislative authority).

The court denied this motion. On July 28, 1998, the court entered judgment in favor of GHC and SDHA. The District filed a timely appeal (No. D031994) from this judgment.
D. Attorney Fees Award in Favor of GHC and SDHA (Appeal No. Dossm)
In September 1998, GHC and SDHA filed separate motions for an award of reasonable contractual attorney fees under Civil Code section 1717, on the grounds each of the contracts contained a fee agreement providing that the prevailing party "in any claim or contest regarding" the contract is entitled to recover its costs, including reasonable attorney fees, and the requested fees and disbursements were reasonable. The District filed written opposition to the motions, contending that (1) because the District's complaint sought a judicial declaration that the contracts were void under sections 1090 and 1092, and GHC and SDHA would not have been liable for the District's attorney fees had the District prevailed, under the "rule of mutuality of remedies" GHC and SDHA were not entitled to attorney fees; and (2) the motions were not supported by admissible evidence.
On March 8, 1999, the court issued its formal ruling granting the motions. On March 19 of that year, the court entered an amended judgment awarding $392,798 in attorney fees and other costs in favor of GHC, and $32,594 in attorney fees and other costs in favor of SDHA. The District filed a timely appeal (No. D033461) from this amended judgment.

DISCUSSION
In these consolidated appeals, the District appeals (in appeal No. D031994) from (1) the summary judgment granted in favor of SDHA and GHC after the court found this action is time-barred as a matter of law; (2) the denial of the District's cross-motion for an order summarily adjudicating *751 there is no merit to the statute of limitations defense asserted by GHC and SDHA; and (3) the subsequent denial of the District's motion to amend the complaint. The District also appeals (in appeal No. D033461) from (4) the portion of the amended judgment awarding $392,798 in attorney fees and other costs in favor of GHC, and $32,594 in attorney fees and other costs in favor of SDHA. We first review the summary judgment granted in favor of GHS and SDHA, and the denial of the District's cross-motion for summary adjudication.

I. Summary Judgment (Appeal No. D031994)

A. Background

As we have already explained, this action arose in May 1991, when the District leased the hospital, a public 465-bed acute care facility and related assets, for a term of 30 years to GHC, a private nonprofit corporation. Acting under color of statutory authority provided by The Local Health Care District Law, the District entered into the contracts that are the subjects of this action: (1) an affiliation agreement between the District and SDHA, which shifted the hospital into the network of private healthcare facilities managed and controlled by SDHA; (2) a lease agreement between the District and GHC, which vested possession of the hospital and it revenues in GHC for 30 years; and (3) a transfer agreement between the District and GHC, which gave GHC title to the District's cash and hospital-related intangible assets.
About six years later, in July 1997, the District commenced the instant action by filing a verified complaint alleging the contracts are void under section 1092 because its chief executive officer, its general counsel, and all five members of its directors had personal financial interests in the agreements in violation of section 1090 (discussed, post), one of California's conflict of interest statutes. In the prayer of the complaint, the District seeks (among other things) a judicial declaration that the contracts are void under section 1092, and that it is entitled to possession of the hospital and all related assets transferred to GHC under the contracts.
GHC, joined by SDHA, moved for summary judgment on the grounds the District's action should be deemed an action on a statute (§ 1090 et seq.) for a penalty or forfeiture within the meaning of Code of Civil Procedure section 340, subdivision (1),[11] and the action is time-barred under the one-year limitation set forth in that statute because the alleged violations of the conflict of interest prohibitions codified in section 1090 occurred in 1991 when the contracts were executed and the District commenced the instant action more than six years later in 1997.
The District filed a cross-motion for summary adjudication, seeking an order summarily adjudicating there is no merit to the statute of limitations defense asserted by GHC and SDHA because the instant action seeks recovery of an interest in public trust property (the hospital and related assets), and thus no statute of limitations applies to this action under the Hoadley "no limitations" rule that originated with the California Supreme Court's decision in Hoadley, supra, 50 Cal. 265.
The court determined the Hoadley rule does not bar the limitations defense asserted by GHC and SDHA, and ruled the instant action is time-barred. Accordingly, the court denied the District's motion for summary adjudication and granted summary judgment in favor of GHC and SDHA.

B. Standard of Review

In evaluating the propriety of a grant of summary judgment our review is de novo, and we independently review the record before the trial court. (Branco v. *752 Kearny Moto Park, Inc. (1995) 37 Cal. App.4th 184, 189, 43 Cal.Rptr.2d 392.) In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment. (Lopez v. University Partners (1997) 54 Cal.App.4th 1117, 1121-1122, 63 Cal.Rptr.2d 359.)
Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. Because the granting of a summary judgment motion involves pure questions of law, we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion. (Ranchwood Communities Limited Partnership v. Jim Beat Construction Co. (1996) 49 Cal. App.4th 1397, 1408, 57 Cal.Rptr.2d 386.) We strictly construe the evidence of the moving party and liberally construe that of the opponent, and any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (Branco v. Kearny Moto Park, Inc., supra, 37 Cal.App.4th at p. 189, 43 Cal.Rptr.2d 392.)

C. Analysis

The principal issue we must decide is whether the Hoadley rule applies to an action by a public health care district to recover a leasehold interest in a public hospital that the district contractually conveyed to private entities under color of lawful statutory authority (The Local Health Care District Law), and the legal defect that allegedly renders the transaction void is an alleged violation of the conflict of interest prohibitions set forth in section 1090. We hold in this case of first impression that the Hoadley rule applies and bars a limitations defense in such an action as a matter of law and sound public policy. Accordingly, we reverse the summary judgment granted in favor of GHC and SDHA.

1. The Hoadley Rule

The Hoadley rule is a common law doctrine developed by the courts in California beginning with the Supreme Court's landmark 1875 decision in Hoadley, supra, 50 Cal. 265. There are few direct references to the Hoadley rule in legal treatises and law reviews, but a review of the Hoadley decision and its progeny shows that this doctrine was reaffirmed by our high state court as recently as 1980 in People v. Shirokow, supra, 26 Cal.3d 301, 311, 162 Cal.Rptr. 30, 605 P.2d 859, and there is no case law that criticizes this doctrine. Under the Hoadley rule, no statute of limitations will apply to bar a state governmental entity's action to recover an interest in public trust property transferred to or claimed by a private party where the claimed private interest is challenged on the ground it is invalid by law. (See Hoadley, supra, 50 Cal. at pp. 274-276 [land dedicated to public use, and held by the state or a municipality for that purpose, "is not subject to the operation of the Statute of Limitations," and thus adverse possession of the land by a private person will not extinguish such public use]; People v. Kerber, supra, 152 Cal. at pages 733-734, 93 P. 878 ["Property ... held by the state in trust for public use cannot be gained by adverse possession, and the statute of limitations does not apply to an action by the state or its agents to recover such property from one using it for private purposes not consistent with the public use.... This rule has been often repeated in the opinions of this court."], citing Hoadley, supra, 50 Cal. at p. 275 and 13 other case authorities; Sixth District, supra, 154 Cal. at p. 130, 97 P. 144 [statutorily authorized transfer of public property to a private corporation held void on the grounds the property transfer was an unconstitutional gift and the Hoadley rule (as recognized in People v. Kerber, supra, 152 Cal. 731, 93 P. 878) barred defendants' *753 statute of limitations defense]; People v. Shirokow, supra, 26 Cal.3d at p. 311, 162 Cal.Rptr. 30, 605 P.2d 859 ["More than a century ago, in Hoadley [, supra,] 50 Cal. [at pp.] 274-276, we articulated the rule that property held by the state in trust for the people cannot be lost through adverse possession. The statute of limitations is of no effect in an action by the state to recover such property from an adverse possessor whose use of the property for private purposes is not consistent with the public use. (People v. Kerber[, supra,] 152 Cal. [at pp.] 733-734, 93 P. 878.)"]; California Trout, Inc. v. State Water Resources Control Bd., supra, 207 Cal.App.3d at pp. 630-631 ["The `public trust' interest as to fishery in a non-navigable stream is in the nature of a state `property' interest. One may not oust the state from such an interest by operation of a statute of limitations. (See e.g., People v. Kerber[, supra,] 152 Cal. [at pp.] 732-736 [93 P. 878].) The reason for this is similar to that which underpins the limitations on estoppel against the state[ ]. `"The public is not to lose its rights through the negligence of its agents, nor because it has not chosen to resist an encroachment by one of its own number, whose duty it was, as much as that of every other citizen, to protect the state in its rights."' (Id., at p. 734, 93 P. 878.)"].)

2. Sections 1090 and 1092

Our determination of whether the Hoadley rule applies so as to render unavailable the statute of limitations defense asserted by GHC and SDHA in this matter necessarily depends in large measure on the legislative purpose of, and public policy concerns underlying, the conflict of interest prohibitions codified in section 1090. Section 1090 provides in part:
"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their capacity, or by any body or board of which they are members."

(Italics added.)
Section 1092 provides in part that, "[e]very contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein." (Italics added.)
Although section 1092 states that such a contract "may be avoided," the courts in this state have interpreted this statutory language to mean that a contract made in violation of section 1090 is void not merely voidable.[12] In Thomson v. Call (1985) 38 Cal.3d 633, 214 Cal.Rptr. 139, 699 P.2d 316 (Thomson), a taxpayer brought suit to challenge the validity of a transaction in which a corporate defendant purchased a parcel of land from a city councilman and then conveyed the land to the city. The California Supreme Court in Thomson affirmed the trial court's finding that the city councilman's interest in the transaction violated section 1090 and the contract in question was "void." (Id. at p. 646, 214 Cal.Rptr. 139, 699 P.2d 316.) In a footnote, the high court explained that, "California courts have generally held that a contract in which a public officer is interested is void, not merely voidable. [Citations.]" (Id. at p. 646, fn. 15, 214 Cal.Rptr. 139, 699 P.2d 316 (italics following comma added).)
In People ex rel. State of Cal. v. Drinkhouse (1970) 4 Cal.App.3d 931, 935, 84 *754 Cal.Rptr. 773, the Court of Appeal explained that, "[a] contract in violation of section 1090 of the Government Code is void. As it was put in Kaufmann and Widiss, The California Conflict of Interest Laws, 36 So. Cal. L. Rev. 186, 199: `Notwithstanding the language that such contracts "may be avoided"  the courts have often held that a contract in which a public officer is interested is void, rather than voidable as the statute indicates.' The authors cite cases supporting their statement: People v. Deysher [(1934)] 2 Cal.2d 141, [146-]147 [40 P.2d 259]; Berka v. Woodward [(1899)] 125 Cal. 119, 127 [57 P. 777]; Stockton Plumbing & Supply Co. v. Wheeler [(1924)] 68 Cal.App. 592, 601 [229 P. 1020]. To these many others could be added, among them Stigall v. City of Taft [(1962)] 58 Cal.2d 565, 569 [25 Cal. Rptr. 441, 375 P.2d 289]." (See also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 624, p. 561 ["Although the statute states that such contracts `may be avoided' ([§] 1092), a contract or sale in violation of [section] 1090 is void, not merely voidable. [Citations]"].)
The term "void contract" is defined as a contract that does not exist at law. (Black's Law Dict., supra, p. 1574, col. 2.) The expression denotes that although the parties to the transaction have purported to make a contract, none has been made in law, no legal rights have been created under the purported agreement, and either party thereto may ignore it at his or her pleasure to the extent it is executory. (Ibid.)

a. Public Policy and Strict Enforcement of Section 1090

California courts have held that the conflict of interest prohibitions set forth in section 1090 are to be strictly enforced (Thomson, supra, 38 Cal.3d at p. 652, 214 Cal.Rptr. 139, 699 P.2d 316) for the purpose of providing a strong disincentive for governmental officers who might be tempted to take personal advantage of their public offices (ibid.), and of "eliminating temptation, avoiding the appearance of impropriety, and assuring the government of the officer's undivided and uncompromised allegiance" (People v. Honig (1996) 48 Cal. App.4th 289, 314, 55 Cal.Rptr.2d 555 (Honig), citing Thomson, supra, 38 Cal.3d at p. 648, 214 Cal.Rptr. 139, 699 P.2d 316),
In San Diego v. S.D. & L.A.R.R. Co. (1872) 44 Cal. 106, our high state court recognized the origins of the conflict of interest statutes in the general principle that "no man can faithfully serve two masters, whose interests are or may be in conflict. The law, therefore, will not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity. `... For even if the honesty of the agent is unquestioned ... yet the principal has in fact bargained for the exercise of all the skill, ability and industry of the agent, and he is entitled to demand the exertion of all this in his own favor.' [Citation.]" (Id. at p. 113.)
More recently in Honig (supra, 48 Cal. App.4th 289, 55 Cal.Rptr.2d 555), the Supreme Court explained that "[t]he duties of public office demand the absolute loyalty and undivided, uncompromised allegiance of the individual that holds the office. [Citations.] Yet it is recognized `"that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government."' [Citation.] Consequently, our conflict-of-interest statutes are concerned with what might have happened rather than merely what actually happened. [Citation.] They are aimed at eliminating temptation, avoiding the appearance of impropriety, and assuring the government of the officer's undivided and uncompromised allegiance. [Citation.] Their objective `is to remove or limit the possibility of any personal influence, either directly or indirectly which might bear on an official's decision....' [Citations.] [¶] In view of the purposes of our conflict-of-interest statutes, it is well established that their *755 scope is not limited to instances of actual fraud, dishonesty, unfairness or loss to the governmental entity, and criminal responsibility is assessed without regard to whether the contract in question is fair or oppressive. [Citation.] Thus, it has been repeatedly held that such matters are irrelevant under section 1090. [Citations.]" (Honig, supra, at p. 314, 55 Cal.Rptr.2d 555, italics omitted.)
The high court in Honig also explained that the courts have broadly construed the term "financially interested" in section 1090 in order to give effect to its legislative purpose: "In enacting the conflict-of-interest provisions the Legislature was not concerned with the technical terms and rules applicable to the making of contracts, but instead sought to establish rules governing the conduct of governmental officials. [Citation.] Accordingly, those provisions cannot be given a narrow and technical interpretation that would limit their scope and defeat the legislative purpose. [Citations.] ... [¶] ... [T]he term `financially interested' in section 1090 cannot be interpreted in a restricted and technical manner. The law does not require that a public officer acquire a transferable interest in the forbidden contract before he may be amenable to the inhibition of the statute, nor does it require that the officer share directly in the profits to be realized from a contract in order to have a prohibited interest in it. [Citations.] Rather, `[t]he instant statutes are concerned with any interest, other than perhaps a remote or minimal interest, which would prevent the officials involved from exercising absolute loyalty and undivided allegiance to the best interests of the [state].' [Citation.] The fact that the officer's interest `might be small or indirect is immaterial so long as it is such as deprives the [state] of his overriding fidelity to it and places him in the compromising situation where, in the exercise of his official judgment or discretion, he may be influenced by personal considerations rather than the public good.' [Citation.] ... [¶] Moreover, prohibited financial interests are not limited to express agreements for benefit and need not be proven by direct evidence. Rather, forbidden interests extend to expectations of benefit by express or implied agreement and may be inferred from the circumstances. [Citations.]" (Honig, supra, 48 Cal.App.4th at pp. 314-315, 55 Cal.Rptr.2d 555, italics added.)

3. The Hoadley Rule Bars the Statute of Limitations Defense Asserted by GHC and SDHA as a Matter of Law and Public Policy

a. Code of Civil Procedure Section 3-5

Turning now to the question of whether the limitations defense asserted by GHC and SDHA in this matter is barred by the Hoadley rule, we first note that Code of Civil Procedure section 345 provides in part that "[t]he limitations prescribed in this chapter apply to actions brought in the name of the state or county or for the benefit of the state or county, in the same manner as to actions by private parties."[13] (Italics added.) This section is found in chapter 3 of the Code of Civil Procedure (§ 335 et seq.), which sets forth the various statutes of limitations that apply to actions other than for recovery of real property.
On the surface, section 345 appears to provide authority that the instant case, which is an action by the District in its capacity as a subdivision of the State of California, may be subject to one or more of the statutes of limitations set forth in chapter 3 of that code. Citing section 345 and City of L.A. v. County of L.A. (1937) 9 Cal.2d 624, 627, 72 P.2d 138 (City of L.A.), GHC and SDHA contend that "[regardless of what the common law rights of a sovereign may have been ... the California Legislature has decided expressly that *756 the statutes of limitation in [ ] Chapter 3 (including Code Civ. Proc. §§ 338, 340, and 343) apply to entities such as the District and, where applicable, will bar their actions." GHC and SDHA thus contend that section 345 supersedes the Hoadley rule. We reject this contention. In our view, the issue presented reduces not to whether section 345 supersedes the Hoadley rule in the instant action, but whether the Hoadley rule supersedes or (to borrow the card-laying metaphor used by the court in its memorandum decision) "trumps" section 345 and the various statutes of limitation set forth in chapter 3.
With respect to this latter issue, a review of the legislative history of section 345 shows it was originally enacted in 1872. (See Historical Note, 13A West's Ann.Code Civ. Proc. (1982 ed.) foll. § 345, p. 541 ["As originally enacted in 1872 the section read: [¶] `The limitations prescribed in this Chapter [chapter 3] apply to actions brought in the name of the State or for the benefit of the State, in the same manner as to actions by private parties.'"]) As already discussed, the Hoadley rule originated with the Supreme Court's subsequent 1875 decision in Hoadley, supra, 50 Cal. 265. We thus view the Hoadley rule as a judicially-created exception to section 345. As we have also discussed, the Hoadley rule was reaffirmed by our high state court as recently as 1980 in People v. Shirokow, supra, 26 Cal.3d 301, 311, 162 Cal.Rptr. 30, 605 P.2d 859, and was recently applied in California Trout, Inc. v. State Water Resources Control Bd., supra, 207 Cal.App.3d 585, 255 Cal.Rptr. 184.[14]
Reliance by GHC and SDHA on the decision in City of L.A., supra, 9 Cal.2d 624, 627, 72 P.2d 138 is misplaced. City of L.A. is inapposite because, unlike the instant case, it did not involve a claim that a contract or transaction was void from its inception as a result of a violation of section 1090 or any conflict of interest statute, and it did not involve or discuss the Hoadley rule. City of L.A. involved an action by a city against a county to recover monies paid by a railroad company to the county, but which should have been paid to the city because the property over which the railroad operated had been annexed to the city. (City of L.A., supra, 9 Cal.2d at pp. 625-626, 72 P.2d 138.)
In support of their contention that the Hoadley rule does not apply to actions involving an alleged violation of the conflict of interest prohibitions of section 1090, GHC and SDHA cite Messner, supra, 44 Cal.App.2d at page 591, 112 P.2d 731, and Schaefer, supra, 180 Cal.App.2d at pages 131-134, 4 Cal.Rptr. 236, for the proposition that California courts have applied statutes of limitations to bar claims based on violations of conflict of interest laws. These decisions, however, provide little guidance with respect to the question before us.
In Messner, the Court of Appeal found that action to be one based upon a liability created by statute, and thus governed by the three-year limitation in Code of Civil Procedure section 338, subdivision (a).[15] (Messner, supra, 44 Cal.App.2d at p. 591, 112 P.2d 731.) Messner, however, is distinguishable because it involved a claim for reimbursement of certain cash payments the county supervisors had made to a county surveyor under an equipment-rental contract in which the surveyor had a personal interest that violated a conflict-of-interest statute, and the claim was based on former Political Code section 4005b, *757 which specifically obligated the district attorney to institute suit to recover any funds paid out by the board of supervisors without authority of law. (Messner, supra, at pp. 590-591, 112 P.2d 731.) The instant action, unlike Messner, is based on section 1090, which does not mandate the commencement of this action. Furthermore, the Messner decision did not involve the applicability of the Hoadley rule.
The Schaefer case, on which GHC and SDHA also rely, also did not involve the applicability of the Hoadley rule. Schaefer involved a taxpayer's representative fraud[16] action to quiet title to, and recover possession of, certain real property purchased from a city by a part-time city attorney, and to recover monies paid to the city attorney for services and costs related to the sales of property by the city to that attorney. (Schaefer, supra, 180 Cal. App.2d at pp. 114-115, 132-133, 4 Cal. Rptr. 236.) Citing Fickeisen v. Feebler (1950) 98 Cal.App.2d 320, 324, 219 P.2d 864 (Fickeisen), and without discussing the Hoadley rule, the Court of Appeal in Schaefer held that the cause of action to quiet title was barred by Code of Civil Procedure section 318.[17] (Schaefer, supra, 180 Cal.App.2d at p. 132, 4 Cal.Rptr. 236.) The Fickeisen case, on which the holding in Schaefer was based, was a quiet title action by the trustee of a bankrupt cemetery corporation. (Fickeisen, supra, 98 Cal.App.2d at p. 322, 219 P.2d 864.) It did not involve an alleged violation of any California conflict of interest statute, nor did it involve or discuss the Hoadley rule. The Schaefer court also held the cause of action for recovery of monies was barred by the limitations in Code of Civil Procedure sections 339, subdivision (1),[18] or 343.[19] *758 (Schaefer, supra, 180 Cal.App.2d at p. 133, 4 Cal.Rptr. 236.)[20] Because Schaefer was a fraud action that did not involve the applicability of the Hoadley rule, it is inapposite for purposes of the instant appeal.
Because there is no case law on point, in deciding whether the Hoadley rule bars the limitations defense asserted by GHC and SDHA in this matter we must balance the legitimate state interest in barring stale claims through the operation of applicable statutes of limitation against the strong state interest (discussed, ante) in assuring the undivided and uncompromised allegiance of public officers and employees in the performance of their official duties through strict enforcement of the various California conflict of interest statutes, including section 1090 with which we are here concerned.
Upon balancing these legitimate competing state interests in light of the facts presented in the instant action, we are persuaded that the latter outweighs the former as a matter of sound public policy. As already discussed, a contract made in violation of section 1090 is void, not merely voidable, and is thus a nullity. (Thomson, supra, 38 Cal.3d at p. 646, fn. 15, 214 Cal.Rptr. 139, 699 P.2d 316; People v. Drinkhouse, supra, 4 Cal.App.3d at p. 935, 84 Cal.Rptr. 773; see also 1 Witkin, Summary of Cal. Law, supra, Contracts, § 624, p. 561.) As a matter of strong public policy, the conflict of interest prohibitions set forth in section 1090 are to be strictly enforced to give effect to the legislative purpose of those prohibitions, which is to provide a strong disincentive for governmental officers and employees who might be tempted to take personal advantage of their public offices, to avoid the appearance of impropriety in the way they conduct their official duties, and thus to assure the government of their undivided and uncompromised allegiance. (Thomson, supra, 38 Cal.3d at p. 652, 214 Cal. Rptr. 139, 699 P.2d 316; Honig, supra, 48 Cal.App.4th at p. 314, 55 Cal.Rptr.2d 555.)
Here, the gravamen of the District's verified complaint is the allegation the District is entitled to recover possession of its hospital and related public trust assets on the ground the contracts executed to carry out the subject leasehold transaction are void from their inception under section 1092 because its former chief executive officer and all five of its former directors were involved in the making of the contracts and had prohibited personal interests in those contracts in violation of section 1090.
In their motion for summary judgment, GHC and SDHA did not contend they were entitled to judgment on the ground the undisputed material facts establish as a matter of law no conflict of interest was involved in the making of the contracts. They sought summary judgment solely on the ground the instant action is timebarred. The court granted summary judgment in favor of GHC and SDHA because it concluded the Hoadley rule does not apply, and the District's complaint is timebarred.
Assuming, arguendo, without deciding or expressing any opinion with respect thereto, that there was a prohibited conflict of interest in this matter such that the subject contracts are void from their inception under sections 1090 and 1092, and thus SDHA and GHC have no valid leasehold interest in the hospital by operation of those sections, an affirmance of the summary judgment in this matter would have the effect of conferring on these private corporate entities an interest in public trust assets by mere passage of time through the operation of a statute of limitations. *759 Such a result would be contrary to the legislative purpose of section 1090, which our high state court has held should be strictly enforced to accomplish that purpose. (Thomson, supra, 38 Cal.3d at p. 652, 214 Cal.Rptr. 139, 699 P.2d 316.) Such a result would also be contrary to the policy embodied in the long-standing Hoadley rule that an invalid private interest in public trust assets may not be validated by operation of a statute of limitations.
We thus hold the Hoadley rule supersedes Code of Civil Procedure section 345 in this matter and bars the statute of limitations defense asserted by GHC and SDHA as a matter of public policy. Accordingly, we reverse the summary judgment granted in their favor.
We note that in granting the summary judgment motion, the court found that no case holds the Hoadley rule supersedes Code of Civil Procedure section 345 and the various statutes of limitations set forth in chapter 3 of that code. However, the Hoadley rule "trumped" chapter 3 limitation defenses in People v. Shirokow, supra, 26 Cal.3d at page 311 (fn.14), 162 Cal.Rptr. 30, 605 P.2d 859, and California Trout, Inc. v. State Water Resources Control Bd., supra, 207 Cal.App.3d at pages 626, 630-631, 255 Cal.Rptr. 184 (citing People v. Kerber, supra, 152 Cal. at pages 732-736, 93 P. 878, which in turn relied on Hoadley, supra, 50 Cal. 265).
The court also ruled that even if the Hoadley rule "trumps" section 345 so that no statute of limitations applies to actions to recover public trust property, the granting of summary judgment is required because (1) the Hoadley rule applies to only two categories of cases, "takeaway" cases involving assertions of a prescriptive right and "giveaway" cases involving unconstitutional gifts of public trust property; and (2) the instant case is neither. The court's ruling that the Hoadley rule applies only to these two categories of cases, however, is unsupported by any statutory or case law authority.
The court further ruled that there is a distinction between inherently invalid transfers of public assets, and transfers that are invalid because of the means by which it was accomplished, such as the prohibited conflicts of interest alleged in the instant action. This ruling is also unsupported by any statutory or case law authority, and is contrary to the holding in Sixth District, supra, 154 Cal. 119, 97 P. 144, which illustrates that the Hoadley rule applies to any action in which a claim of a private interest in state public trust property is challenged on the ground such interest is invalid by law and the defendant possessor asserts a defense that the action is barred by a statute of limitations.
In the Sixth District case, which is similar in several key respects to the instant case, the California Supreme Court applied the Hoadley rule in a case that involved no private prescriptive right claim, but did involve a challenge by a public entity to a statutorily authorized transfer of public property to a private corporation. In Sixth District, the governing board of an agricultural district created a new private corporation, issued capital stock and conveyed to the private entity all the district's property, which consisted principally of fairgrounds used for community agricultural exhibitions. (Sixth District, supra, 154 Cal. at pp. 122, 126, 97 P. 144.) The conveyance was made in accordance with a new statute that expressly authorized such transactions and purported to give to the stockholders of the private corporation the right to control and manage the property for their own benefit. (Id. at pp. 125-126, 97 P. 144.) Years later, the district brought an action to recover the property alleging the statute in question was unconstitutional. (Id. at pp. 121, 128, 97 P. 144.) The defendants claimed (among other things) that the action was time-barred under various statutes of limitations. (Id. at p. 130, 97 P. 144.)
The Supreme Court in Sixth District affirmed the judgment in favor of the district for recovery of the property conveyed to the private corporation, holding that the *760 property was public property, and the statute that authorized the transactions was void because it was in conflict with a provision of the California Constitution that denied to the Legislature the power to make any gift of public property. (Sixth District, supra, 154 Cal. at pp. 128-129, 97 P. 144.) Applying the Hoadley rule recognized in People v. Kerber, supra, 152 Cal. 731, 93 P. 878 (discussed, ante), the high court also rejected the defendants' limitations defense, stating: "[T]he property was held in trust by a state institution or public agency for a public use, which public use has not been discontinued or abandoned by any lawful act of public authority. As to such property it is well settled that the statute of limitations has no application." (Sixth District, supra, 154 Cal. at p. 130, 97 P. 144, italics added.)
The Sixth District decision illustrates that the Hoadley rule applies to any action in which a claim of a private interest in public property is challenged on the ground such interest is invalid by law and the defendant possessor asserts a defense that the action is barred by a statute of limitations. The conveyance of the public fairgrounds to the private corporation was lawful when it occurred because the transaction was expressly authorized by statute. The Supreme Court in that case later declared the statute void and held the conveyance was invalid because it was an unconstitutional gift of public property to a private entity, and held the defendants' limitations defense was barred under the Hoadley rule because the conveyance of the fairgrounds was invalid by law. Here, as in Sixth District, the conveyance of the public property in question (the leasehold interest in the hospital and related assets) was expressly authorized by statute (The Local health Care District Law).

II. Other Issues

Because we have concluded (for reasons discussed, ante) that public policy and application of the Hoadley rule require reversal of the summary judgment granted in favor of GHC and SDHA, we also conclude the court erred by denying the District's motion for summary adjudication[21] and its post-summary judgment motion for leave to amend its complaint. Because GHC and SDHA are not entitled to prevailing party status at this stage of the proceedings in this matter, we also reverse the portion of the amended judgment awarding them costs, including attorney fees.
DISPOSITION
The judgment is reversed. Each party shall bear its own costs on appeal.
WORK, Acting P.J., and O'ROURKE, J., concur.
NOTES
[1] Subsequent statutory references are to the Government Code, unless otherwise specified.
[2] By order dated September 16, 1999, this court on its own motion consolidated the District's appeals Nos. D031994 and D033461.
[3] Each of the answers asserts the limitations set forth in Code of Civil Procedure sections 337, subdivisions (1) and (3); 338, subdivisions (a), (b) and (c); 340, subdivisions (1) and (2); and 343. The longest limitations period set forth in these statutes is four years. (See Code Civ. Proc., §§ 337, 343).
[4] Although GHC's motion was also styled in the alternative as a motion for an order summarily adjudicating that each of the four causes of action alleged in the complaint was founded upon section 1090 et seq. and thus barred by the one-year limitation period applicable to "[a]n action upon a statute for a penalty or forfeiture" as set forth in Code of Civil Procedure section 340, this alternative summary adjudication motion was rendered moot when the court granted the summary judgment motion. For purposes of this appeal, we shall refer to the motion as a summary judgment motion.
[5] We interpret the court's statements to mean that the gravamen of the District's complaint is not recovery of public trust property, and thus the instant action falls into the category of actions for other than recovery of real property that are generally governed by the statutes of limitations set forth in chapter 3 of the Code of Civil Procedure (Code Civ. Proc., § 335 et seq.).
[6] Code of Civil Procedure Code of Civil Procedure section 345 provides in part: "The limitations prescribed in this chapter [chapter 3, § 335 et seq.] apply to actions brought in the name of the state or county or for the benefit of the state or county, in the same manner as to actions by private parties."
[7] All further references to chapter 3 are to chapter 3 of the Code of Civil Procedure (§ 335 et seq.).
[8] The court was apparently referring to two decisions cited by GHC and SDHA: County of Marin v. Messner (1941) 44 Cal.App.2d 577, 591, 112 P.2d 731 (Messner); and Schaefer v. Berinstein (1960) 180 Cal.App.2d 107, 131-134, 4 Cal.Rptr. 236 (Schaefer), disapproved on other grounds in Jefferson v. J.E. French Co. (1960) 54 Cal.2d 717, 7 Cal.Rptr. 899, 355 P.2d 643 (see fn. 20, post).
[9] The court cited the following as examples of "takeaway" cases: Hoadley, supra, 50 Cal. 265; County of Yolo v. Barney (1889) 79 Cal. 375, 21 P. 833; Board of Education v. Martin (1891) 92 Cal. 209, 28 P. 799; People v. Kerber (1908) 152 Cal. 731, 93 P. 878; People v. California Fish Co. (1913) 166 Cal. 576, 138 P. 79; People v. Chambers (1951) 37 Cal.2d 552, 233 P.2d 557; People v. Shirokow (1980) 26 Cal.3d 301, 162 Cal.Rptr. 30, 605 P.2d 859; and California Trout, Inc. v. State Water Resources Control Bd. (1989) 207 Cal.App.3d 585, 255 Cal.Rptr. 184.
[10] The court cited the following as examples of "giveaway" cases: Sixth District etc. Assoc. v. Wright (1908) 154 Cal. 119, 97 P. 144 (Sixth District); and Allen v. Hussey (1950) 101 Cal.App.2d 457, 225 P.2d 674.
[11] Code of Civil Procedure section 340, subdivision (1), provides: "Within one year: [¶] (1) Statutory penalty or forfeiture to individual and state. An action upon a statute for a penalty or forfeiture, when the action is given to an individual, or to an individual and the state, except when the statute imposing it prescribes a different limitation."
[12] "There is [a] difference between the two words `void' and `voidable': void in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; voidable exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it.... But the distinction between the terms `void' and `voidable,' in their application to contracts, is often one of great practical importance; and, whenever entire technical accuracy is required, the term `void' can only be properly applied to those contracts that are of no effect whatsoever, such as are a mere nullity, and incapable of confirmation or ratification." (Black's Law Dict. (6th ed.1990) p. 1573, col. 2, original italics.)
[13] All subsequent references to section 345 are to Code of Civil Procedure Code of Civil Procedure section 345.
[14] Although the Court of Appeal in California Trout, Inc. did not directly cite the Hoadley decision, it did cite People v. Kerber, supra, 152 Cal. 731, 93 P. 878, which (as we discussed, ante) was based on and cited Hoadley. (California Trout, Inc. v. State Water Resources Control Bd., supra, 207 Cal.App.3d at pp. 630-631, 255 Cal.Rptr. 184.)
[15] Code of Civil Procedure section 338, subdivision (a), is a chapter 3 three-year statute of limitations that provides: "Within three years: [¶] (a) An action upon a liability created by statute, other than a penalty or forfeiture."
[16] In their petition for rehearing filed April 14, 2000, GHC and SDHA disagree with this court's interpretation of Schaefer and contend that, "[w]hile the [Schaefer] decision does not explicitly identify the words `Government Code section 1090,' the footprints of that section appear throughout the text of the opinion...." They also contend that "the appellate court's application of statutes of limitation [in Schaefer] did extend to causes of action premised upon Government Code section 1090." We reject these contentions. For purposes of this footnote, we refer to the first Schaefer decision (Schaefer v. Berinstein (1956) 140 Cal.App.2d 278, 295 P.2d 113) as Schaefer I and the second Schaefer decision (Schaefer, supra, 180 Cal.App.2d 107, 4 Cal. Rptr. 236) as Schaefer II. Both Schaefer I and Schaefer II involved appeals in two cases: the Schaefer case and the Terry case. (Schaefer II, supra, 180 Cal.App.2d at p. 114, 4 Cal.Rptr. 236.)

With respect to the gravamen of the action, the Court of Appeal stated in Schaefer II, "[t]he nature of the complaint in the Schaefer case is set forth in the opinion on the prior appeal and need not be repeated here." (Schaefer II, supra, 180 Cal.App.2d at p. 114, 4 Cal.Rptr. 236, italics added.) In Schaefer I, the court explained that "the gravamen of the action is fraud." (Schaefer I, supra, 140 Cal. App.2d at p. 294, 295 P.2d 113.) Elsewhere in the Schaefer I opinion, the Court of Appeal stated that "[t]he third amended complaint, referred to as the complaint, contains eight counts, all predicated on the common ground of fraud...." (Id. at p. 283, 295 P.2d 113.)
[17] Code of Civil Procedure section 318 is found in chapter 2 (§§ 315-330), which governs limitations in actions for recovery of real property. Section 318 is a five-year statute of limitations that provides: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the property in question, within five years before the commencement of the action."
[18] Code of Civil Procedure section 339, subdivision (1), is a chapter 3 two-year statute of limitations that provides: "Within two years: 1. An action upon a contract, obligation or liability not founded upon an instrument of writing, except as provided in Section 2725 of the Commercial Code or subdivision 2 of Section 337 of this code; or an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided, that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."
[19] Code of Civil Procedure section 343 is a chapter 3 "catch-all" four-year statute of limitations that provides: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."
[20] The Schaefer court's additional holding that a claim for an accounting is governed in all cases by the four-year limitation contained in Code of Civil Procedure section 343 was disapproved by the Supreme Court in Jefferson v. J.E. French Co., supra, 54 Cal.2d at pages 719-720, 7 Cal.Rptr. 899, 355 P.2d 643.
[21] As already noted, the District sought an order summarily adjudicating there is no merit to the statute of limitations defense asserted by GHC and SDHA because the instant action seeks recovery of an interest in public trust property, and thus no statute of limitations applies to this action under the Hoadley rule.